Argued and submitted November 7, 1991, decision of Court of Appeals and judgment
of circuit court affirmed July 9, reconsideration denied August 25, 1992

# HOFFMAN CONSTRUCTION COMPANY
# OF ALASKA,
## and Hoffman Construction,
### *Petitioners on Review,*

*v.*

# FRED S. JAMES & CO., OF OREGON,
### *Defendant,*

### *and*

# CENTURY INDEMNITY COMPANY
### *Respondent on Review.*

## (CC A8901-00240; CA A63379; SC S38053)

836 P2d 703

Thomas H. Tongue, of Dunn, Carney, Allen, Higgins & Tongue, Portland, argued the cause and filed the petition for petitioners on review.

Peter R. Chamberlain, of Bodyfelt, Mount, Stroup & Chamberlain, Portland, argued the cause for respondent on review. With him on the response was Richard A. Lee, Portland.

Before Carson, Chief Justice, and Peterson, Gillette, Van Hoomissen, Fadeley, and Graber, Justices.

GILLETTE, J.

## GILLETTE, J.

This case involves the extent of liability of an insurer under certain contractual limitations in an "umbrella" liability insurance policy, when one of the primary insurers becomes insolvent.[1] Plaintiffs brought the action seeking a declaratory judgment that they are entitled to recover under an umbrella liability insurance policy issued by defendant Century Insurance Company. Both parties[2] moved for summary judgment; the circuit court granted defendant's motion and denied plaintiffs'.[3] The Court of Appeals affirmed. *Hoffman Construction Co. v. Fred S. James & Co.*, 106 Or App 329, 807 P2d 808 (1991). We also affirm.

The material facts are not in dispute. Defendant sold plaintiffs a liability insurance policy that provided that defendant would, in the event of a loss covered by the policy, pay the excess of the amount of the loss over the "amount recoverable" under certain underlying insurance policies. There were two underlying insurance policies in this case: (1) The bottom layer, a policy for $50,000 with Seaboard Surety Company (Seaboard); and (2) the second layer, a policy for $450,000 with Holland-America Insurance Company (Holland-America). Plaintiffs suffered a covered loss in the amount of $375,000. Seaboard paid the first $50,000 of the loss. Holland-America became insolvent, however, and did not pay any of plaintiffs' loss. Plaintiffs then made a demand on defendant for the $325,000 that could not be recovered

---

[1] Liability insurance policies frequently are arranged in tiers, with each level of policy designed to "kick in" when the coverage provided by the lower level of insurance is exhausted. The general nomenclature surrounding this phenomenon labels an insured's basic insurance as the "primary" insurance, the insured's next level of insurance (that covers risks involving amounts in excess of the primary insurance) as "excess" insurance, and the insured's final level of insurance (that covers risks only after and to the extent that lower levels do not) as "umbrella" insurance. *See generally* Annotation, *Primary Insurer's Insolvency as Affecting Excess Insurer's Liability*, 85 ALR4th 729, 735-36 (1991). In the present case, there were only two levels of protection: The primary level, provided by the two insurance companies, and an umbrella level, provided by defendant.

[2] Plaintiffs dismissed their claims against Fred S. James & Co. without prejudice. We refer to Century Indemnity Insurance as "defendant."

[3] Defendants filed a cross-claim against Fred S. James & Co., which cannot be adjudicated fully until this appeal is concluded. The trial court entered final judgment under ORCP 67B as to the issues that we address here.

from Holland-America. Defendant denied liability; the present declaratory judgment action followed.

The insurance policy provides:

### "COVERAGE AGREEMENTS

"I.     COVERAGE. The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Insured for all sums which the Insured shall be obligated to pay by reason of liability * * *.

"II.     LIMIT OF LIABILITY. The company shall only be liable for the ultimate net loss the excess of either

"(a)     the *amount recoverable* under the underlying insurances as set out in Item 7 of the Declarations, or

"(b)     the amount of the retained limit stated in Item 4 of the Declarations in respect of each occurrence not covered by said underlying insurances,

"(hereinafter called the 'underlying limits'):

"and then only up to a further limit as stated in Item 5 of the Declarations in respect of each occurrence — subject to a limit as stated in Item 6 of the Declarations in the aggregate for each annual period during the currency of this policy, commencing from the effective date and arising out of any hazard for which an aggregate limit of liability applies in the underlying policies scheduled or listed herein. In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurances by reason of payment of claims in respect of occurrences occurring during the period of this policy, this policy, subject to all the terms, conditions and definitions hereof, shall

"(1)     in the event of reduction pay the excess of the reduced underlying limit;

"(2)     in the event of exhaustion continue in force as underlying insurance.

"* * * * *

### "CONDITIONS

"THIS POLICY IS SUBJECT TO THE FOLLOWING CONDITIONS:

"* * * * *

"J.     LOSS PAYABLE. Liability under this policy with respect to any occurrence shall not attach unless and until the Insured, or the Insured's underlying insurer, shall have

paid the amount of the underlying limits on account of such occurrence. * * *

"* * * * *

"L. OTHER INSURANCE. If other valid and collectible insurance, whether or not scheduled hereunder, which is written by another insurer is available to the Insured covering a loss also covered by this policy, other than insurance that is in excess of this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. * * *

"* * * * *

"Q. MAINTENANCE OF UNDERLYING INSUR-ANCES. It is a condition of this policy that the underlying insurances as set out in Item 7 of the Declarations shall be maintained in full effect during the currency of this policy except for any reduction of the aggregate limit or limits applicable thereto solely by payment of claims in respect of occurrences occurring during the period of this policy. Failure of the Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the Company shall only be liable to the same extent as it would have been had the Insured complied."

(Emphasis added.)

In their motions for summary judgment, plaintiffs and defendant offered competing interpretations of the phrase "amount recoverable under the underlying insurances" in part II(a) ("LIMIT OF LIABILITY") of the policy. Plaintiffs argued that the phrase means that defendant is required to pay for amounts that an insured is not able to recover from an underlying insurer like Holland-America. Defendant argued that the phrase means that plaintiffs are entitled to recover only for any portion of the net loss that exceeds the limits of the underlying policies.

The circuit court held that defendant is required to "drop down"[4] and provide coverage to plaintiffs only with respect to "occurrences" described in paragraph II(b) of the policy and that the insolvency of an underlying insurer is not

---

[4] "Drop down coverage occurs when an insurance carrier of a higher level of coverage is obligated to provide the coverage that the carrier of the immediately underlying level of coverage had agreed to provide." Annotation, *supra* n 1, 85 ALR4th at 734 n 4.

such an "occurrence." The Court of Appeals affirmed, although on grounds different than those relied on by the trial court. The majority rejected plaintiffs' suggested interpretation, because it found that interpretation to be inconsistent with other provisions of the policy. *Hoffman Construction Co. v. Fred S. James & Co., supra,* 106 Or App at 333. The dissent found no such inconsistency. It would have held that the policy's reference, in Condition "L," to other "collectible insurance" affirmatively established that defendant was obligated to drop down if the underlying insurance were to prove to be uncollectible or unrecoverable. *Id.* at 335 (Riggs, J., dissenting).

Resolution of this case turns on a question of law, the interpretation of the insurance policy. In any such effort, "[t]he primary and governing rule of the construction of insurance contracts is to ascertain the intention of the parties." *Totten v. New York Life Ins. Co.,* 298 Or 765, 770, 696 P2d 1082 (1985). We determine the intention of the parties based on the terms and conditions of the insurance policy. ORS 742.016 ("Except as provided in ORS 742.043 [relating to oral binders], every contract of insurance shall be construed according to the terms and conditions of the policy."). The insurance policy in the present case does not define the crucial term, "amount recoverable." We are therefore required to give that term meaning in the context of the present dispute.

Both plaintiffs and defendant offer plain meaning interpretations, based on dictionary definitions, of "amount recoverable." Plaintiffs argue that "amount recoverable" means the amount "able to be recovered," *i.e.,* the amount that plaintiffs actually were able to get from their primary insurance carriers. Defendant argues that "amount recoverable" means the amount "capable of recovering," *i.e.,* the amount that plaintiffs would have been able to recover from their prime carriers had not insolvency intervened. Recognizing that both propounded definitions are at least plausible, plaintiffs argue further that, because the term "amount recoverable" is susceptible to two meanings, it is "ambiguous" and, therefore, this court should adopt plaintiffs' suggested interpretation for that term under the rule that

ambiguous terms contained within an insurance policy are to be construed against the insurer, who drafted the policy.

■     For a term to be ambiguous in a sense that justifies resort to the foregoing rule, however, there needs to be more than a showing of two plausible interpretations; given the breadth and flexibility of the English language, the task of suggesting plausible alternative meanings is no challenge to capable counsel. Competing plausible interpretations simply establish ambiguity that will require some interpretive act by the court. This triggers a series of analytical steps, any one of which may resolve the ambiguity. The rule on which plaintiffs rely is the last of these steps. In other words, a term is ambiguous in a sense that justifies application of the rule of construction against the insurer *only* if two or more plausible interpretations of that term withstand scrutiny, *i.e.*, continues to be reasonable, after the interpretations are examined in the light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole. *See, e.g., Denton v. International Health & Life*, 270 Or 444, 450, 528 P2d 546 (1974) ("all parts and clauses [of an insurance contract] must be construed to determine if and how far one clause is modified, limited or controlled by others"); *Fisher v. California Insurance Co.*, 236 Or 376, 380, 388 P2d 441 (1964) ("Contracts, including insurance contracts, are to be construed as a whole, not as a congeries of separate parts."); *I-L Logging Co. v. Mfgrs. & Whlse. Ind. Exc.*, 202 Or 277, 317, 273 P2d 212, 275 P2d 226 (1954) (the insurance "contract must be considered as a whole"). Ambiguity requires resort ultimately to the rule that plaintiffs invoke because, when two or more competing, plausible interpretations survive the kind of scrutiny described, the term still must "reasonably be given a broader or a narrower meaning, depending upon the intention of the parties in the context in which such words are used by them." *Shadbolt v. Farmers Insur. Exch.*, 275 Or 407, 411, 551 P2d 478 (1976); *accord Joseph v. Utah Home Fire Ins. Co.*, 313 Or 323, 330, 835 P2d 885 (1992); *Chalmers v. Oregon Auto Ins. Co.*, 262 Or 504, 509, 500 P2d 258 (1972). That is, when two or more competing, plausible interpretations prove to be reasonable after all other methods for resolving the dispute over the meaning of particular words fail, *then* the rule of interpretation against the drafter of the language becomes

applicable, because the ambiguity cannot be permitted to survive. It must be resolved.

In the present case, plaintiffs' suggested interpretation of "amount recoverable," while plausible in isolation, is not reasonable either when scrutinized in context — under the "LIMIT OF LIABILITY" section — or in the light of the policy as a whole — under the "LOSS PAYABLE" and "OTHER INSURANCE" conditions.

We first scrutinize plaintiffs' suggested interpretation in context, *i.e.*, under the "LIMIT OF LIABILITY" section. That section states that defendant "shall only be liable for the ultimate net loss the excess of * * * the 'underlying limits.' " The policy defines "underlying limits" as the *"amount recoverable* under the underlying insurances." (Emphasis added.) The difficulty with plaintiffs' theory (*viz.*, that "amount recoverable" means the "amount able to be recovered") is that, under such an interpretation, the portion of the "LIMIT OF LIABILITY" section that specifically identifies the circumstances in which defendant will provide "drop down" coverage would be rendered meaningless. That portion reads:

> "In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurances *by reason of payment of claims in respect of occurrences occurring during the period of this policy,* this policy, subject to all the terms, conditions and definitions hereof, shall
>
> "(1)   in the event of reduction pay the excess of the reduced underlying limit[.]"

(Emphasis added.) Substituting "the amount able to be recovered from the underlying insurances" for "underlying limit," the phrase will read:

> "In the event of reduction * * * of the aggregate limits of liability under said underlying insurances by reason of payment of claims * * * this policy * * * shall
>
> "(1)   * * * pay the excess of the reduced [amount able to be recovered from the underlying insurances.]"

Under plaintiffs' interpretation of "amount recoverable," there was no need for the parties to agree that, if the limit of an underlying policy were reduced, then defendant would pay the excess of that reduced limit. Defendant *already would*

*have* an obligation to pay the excess of that reduced limit, because that reduced limit would be the amount that plaintiffs were "able to recover" under the underlying policy.

■ In contrast to that reading of the "drop down" provision of the "LIMIT OF LIABILITY" section, defendant's suggested interpretation gives the provision meaning. Under defendant's interpretation, the "amount recoverable" refers to the amount of the underlying insurances *as they are written*. The "drop down" provision is an exception: The "drop down" provision extends umbrella coverage to those situations in which there is reduced primary insurance due to the fact that the primary is partially or wholly exhausted on account of the payment of claims. That is precisely what that provision says. Defendant's interpretation lets all provisions have meaning; plaintiffs' would not. We assume that parties to an insurance contract do not create meaningless provisions. *See New Zealand Ins. v. Griffith Rubber*, 270 Or 71, 75, 526 P2d 567 (1974) (an insurance policy is to be reasonably interpreted "so that no part of it is ignored and effect can be given to every word and phrase"). So assuming, we find defendant's interpretation to be reasonable, but plaintiffs' not to be reasonable.

While (strictly speaking) the interpretive methodology that we have described does not require it, we also consider plaintiffs' suggested interpretation of "amount recoverable" in the light of the policy as a whole. We conclude that plaintiffs' interpretation conflicts with the "LOSS PAYABLE" and "OTHER INSURANCE" conditions of the policy. The "LOSS PAYABLE" condition reads, in relevant part:

> "Liability under this policy with respect to any occurrence shall not attach unless and until the Insured, or the Insured's underlying insurer, shall have paid the amount of the underlying limits on account of such occurrence."

Under plaintiffs' interpretation of "amount recoverable," that portion of the "LOSS PAYABLE" condition would read:

> "Liability under this policy with respect to any occurrence shall not attach unless and until the Insured, or the Insured's underlying insurer, shall have paid the amount [able to be recovered on the underlying insurances, if any] on account of such occurrence."

It is clear that the effect of plaintiffs' suggested interpretation of "amount recoverable" is to create a meaningless redundancy under the "LOSS PAYABLE" condition, because the underlying insurer *always* will pay the amount that the insured was "able to recover" from the underlying insurer — that is why the insured was able to recover it. It is not reasonable to assume that the parties intended that that portion of the "LOSS PAYABLE" condition be meaningless. *New Zealand Ins. v. Griffith Rubber, supra.*

A further problem arises with plaintiffs' suggested interpretation of "amount recoverable," if that interpretation is read into the "OTHER INSURANCE" condition. That condition reads:

> "If other valid and *collectible* insurance, whether or not scheduled hereunder, which is written by another insurer is available to the Insured covering a loss also covered by this policy, other than insurance that is in excess of this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance."

(Emphasis added.) That condition, plaintiffs argue, shows that defendant intended the policy to "cover all losses except where there is other valid and collectible insurance available to the insured."

The problem for plaintiffs with that argument is that the use of the word "collectible" shows that the parties were aware of that consideration — the collectibility of insurance — and chose, nonetheless, *not* to include it separately in connection with the term "amount recoverable under the underlying insurances." That omission is not without reason. Defendant, in this context of umbrella insurance, wrote the policy "with the existence of the primary policy in mind." *Maine Bonding v. Centennial Ins. Co.*, 298 Or 514, 520, 693 P2d 1296 (1985).[5] The "amount recoverable" term expressly

---

[5] Defendant cites as authority for the present case certain statements made by this court in *Maine Bonding v. Centennial Ins. Co.*, 298 Or 514, 520, 693 P2d 1296 (1985), that "[t]he excess carrier's obligation to pay begins where the primary insurer's ends — when the limits of the primary policy are exhausted," and that "[t]he excess carrier is liable for the amount of any judgment in excess of the primary policy." Those statements were made in the context of a different problem than the one involved here. Thus, although the text of the statements lends some comfort to defendant, the statements were not made with this case in mind and therefore do not control this case.

is intended to recognize the underlying insurance policies set forth in Item 7 of the Declarations.

■ By contrast, the "OTHER INSURANCE" condition, a standard provision contained in many umbrella insurance policies, is intended to limit defendant's liability in the event that other insurance *is available* to plaintiffs. *See Alaska Rural Elec. Co-op v. INSCO Ltd.*, 785 P2d 1193, 1196 (Alaska 1990) (stating purpose of "other insurance" condition in umbrella liability insurance policy). Thus, if plaintiffs obtained other insurance polices, or otherwise were entitled to other insurance coverage, then any amounts "collectible" under those other policies arguably would reduce the amount that defendant as the umbrella insurer would have to pay plaintiffs in the event of an occurrence. That scheme for allocating burdens is neither unusual nor unfair to plaintiffs. *See* Annotation, *Primary Insurer's Insolvency as Affecting Excess Insurer's Liability*, 85 ALR4th 729, 746-57 (1991) (discussing effect of "collectible" insurance term in "OTHER INSURANCE" conditions nearly identical to the present case). We hold, therefore, that the term "collectible insurance" in the "OTHER INSURANCE" condition does not affect the meaning of the term "amount recoverable."

■ From the foregoing, and applying the factors used by Oregon courts in determining when an insurance policy term is ambiguous in a way that requires that the term be construed against the insurer, we reach the following conclusions:

1. The term "amount recoverable" is pivotal to resolution of this case.

2. The term is not defined in the policy, so it must be construed by resort to various aids to interpretation of the parties' intent.

3. The first method of interpretation — plain meaning — is not available in this case, because "amount recoverable" is susceptible to more than one plausible interpretation.

4. Subjecting each plausible interpretation of the term, "amount recoverable," to scrutiny in light of the context in which it is used and in light of the other provisions of

the policy, plaintiffs' proffered interpretation is not reasonable, because accepting it would require us to disregard other provisions of the insurance policy.

5. Defendant's proffered interpretation of the term, "amount recoverable," is reasonable, because it does not require the nullification of other parts of the policy.

6. Because only one proffered interpretation of the term, "amount recoverable," is reasonable, the ambiguity may be resolved on that basis.

7. Because there is no remaining ambiguity, resort to the rule that ambiguities are construed against the insurer is inappropriate.

8. We construe the policy in accordance with the only reasonable interpretation of "amount recoverable" — *viz.*, the policy limits.

We recognize that plaintiffs' contrary argument, that the term "amount recoverable" is ambiguous and should therefore be construed against the insurer, has been adopted by other courts, both state and federal, in cases involving similar umbrella liability insurance policies. *See* Annotation, *Primary Insurer's Insolvency as Affecting Excess Insurer's Liability*, 85 ALR4th 729 (1991) (setting forth alternative arguments and differing court decisions). We need not repeat what that annotation satisfactorily accomplishes. We are not, however, persuaded by the five decisions on which plaintiffs specifically rely.

In *Donald B. MacNeal, Inc. v. Inter. Fire & Cas.*, 132 Ill App 3d 564, 477 NE2d 1322 (1985), and *Reserve Ins. Co. v. Pisciotta*, 30 Cal 3d 800, 180 Cal Rptr 628, 640 P2d 764 (1982), the respective courts failed to scrutinize the insured's suggested interpretation of "amount recoverable" in the context in which the policy used that term, or under the policy as a whole. Without such scrutiny, the interpretation that those courts give to the term in question remains merely plausible, rather than legally ambiguous.[6] The analysis and rationale of those cases therefore is not helpful.

---

[6] As we noted in *I-L Logging Co. v. Mfgrs. & Whlse. Ind. Exc.*, 202 Or 277, 314, 273 P2d 212, 275 P2d 226 (1954), language used in a policy "must be read * * * in the light of the particular provisions of the insurance contract there involved."

In *Lechner v. Scharrer*, 145 Wis 2d 667, 429 NW2d 491 (Wis App 1988), and *McGuire v. Davis Truck Services, Inc.*, 518 So 2d 1171 (La App 1988), the courts interpreted the term, "amount recoverable," under the respective policies involved in those cases — both of which were identical in pertinent portions to the policy here — but did so without any substantive analysis. In *Lechner v. Scharrer, supra*, the court stated that the ambiguity in the term, "amount recoverable," "nearly leaps off the printed page." 429 NW2d at 494. By interpreting that term to require that the excess insurer "drop down," however, the court admitted that "either the 'Limit of Liability' section or Condition J [the "LOSS PAYABLE" condition] will be rendered superfluous," a construction the court stated was to be avoided. *Id.* The court then proceeded to announce precisely the kind of decision that it had said should be avoided. We find the *Lechner* decision to be particularly unpersuasive.

In *McGuire v. Davis Truck Services, Inc., supra*, the court likewise recognized that it was failing to give effect to the "LOSS PAYABLE" condition of the policy. The court stated that its reason for so doing was that "the use of the terms 'recoverable' and 'valid and collectible' earlier in the policy make the policy's meaning ambiguous." 518 So 2d at 1174. The court, therefore, made its decision before construing the "LOSS PAYABLE" condition. The court's reasoning is perplexing; it stated that the term "valid and collectible" came earlier in the policy than the "LOSS PAYABLE" condition. However, the "LOSS PAYABLE" condition is Condition "J"; the "OTHER INSURANCE" condition — the location of the term "valid and collectible" — is Condition "L." Under normal circumstances, the letter "J" precedes the letter "L." Indeed, those respective letters correspond to the same provisions in the policy in the present case — the "OTHER INSURANCE" condition follows the "LOSS PAYABLE" condition. The premise for the court's decision therefore appears wrong. Moreover, letting the *order of appearance* rather than the *substance* of provisions serve as the basis for creating an ambiguity seems indefensible, in any event. As with *Lechner v. Scharrer, supra*, we find the court's decision in *McGuire v. Davis Truck Services, Inc., supra*, to be unpersuasive.

Finally, in *Sifers v. General Marine Catering Co.*, 892 F2d 386 (5th Cir 1990), a case involving Louisiana law, the court held that the term "amount recoverable" was *not ambiguous*. Instead, the court held that the term was a provision that was in the favor of the insured. The court, however, expressly stated that its holding was mandated by binding Louisiana precedent, *Mission Nat. Ins. Co. v. Duke Transp. Co.*, 792 F2d 550, 553 (5th Cir 1986). The federal court was wrong. In *Mission Nat. Ins. Co. v. Duke Transp. Co.*, the insurance policy at issue did not contain the term, "amount recoverable." The *Mission Nat. Ins.* court did discuss that term in the context of the court's review of persuasive authorities on "drop down" liability of excess insurers, specifically citing the interpretation of that term by the California Supreme Court in *Reserve Ins. Co. v. Pisciotta, supra, Mission Nat. Ins. Co. v. Duke Transp. Co., supra,* 792 F2d at 553, but that discussion was not a holding. Thus, the court in *Sifers v. General Marine Catering Co., supra,* mistook *dictum* in a prior decision for binding precedent. Moreover, we disagree with that court's interpretation of the term, "amount recoverable," as being clearly in favor of the insured. As the rest of this opinion amply demonstrates, the *most* that can be said concerning interpretation of the term is that plausible arguments can be made either way.

When read in the context in which it is used and in light of the other provisions of the policy here involved, the term, "amount recoverable," has only one reasonable interpretation: It refers to the amount that could be recovered under the underlying primary insurance policies as those policies were written, *i.e.,* the policy limits of the primary policies. Therefore, defendant is not obligated to pay on an occurrence until the covered loss exceeds $500,000. Because the amount of the covered loss in this case was $375,000, defendant is not liable to plaintiffs under the policy. The trial court did not err in granting summary judgment to defendant.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.