70 F.3d 1278
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
HOUSTON GENERAL INSURANCE COMPANY, a Texas corporation,
Plaintiff-Appellee,
v.
T.A.C.X., a partnership of A.C.X. Trading, Inc., a
California corporation, and Taggares Farms, Inc.,
a Washington corporation, Defendant-Appellant.
 No. 94-35862.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 14, 1995.
Decided Dec. 4, 1995.
 
 Before: BROWNING, RYMER, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 T.A.C.X. appeals the district court's grant of summary judgment in favor of Houston General Insurance Company as well as the district court's denial of T.A.C.X.'s cross motion for summary judgment. Houston sought a declaration that it had correctly valued and paid for T.A.C.X.'s hay loss at the replacement value of the unfinished hay at T.A.C.X.'s facility. On cross motions for summary judgment, the district court granted Houston's motion and denied T.A.C.X.'s motion.
 
 
 3
 We have jurisdiction over this timely appeal pursuant to 28 U.S.C. Sec. 1291, and we reverse the district court's summary judgment for Houston.[1]
 
 
 4
 * T.A.C.X. argues that the district court erred in holding that the phrase "terminal market" refers to the T.A.C.X. facility rather than to an export port of its choice. Houston contends that T.A.C.X.'s interpretation is contrary to the unambiguous terms of the endorsement, and that the phrase "terminal market" has a commonly understood meaning in the agricultural industry as the place at which an agricultural product can be stored, undergo final processing, be weighed, graded, and inspected by agricultural authorities, and be placed in containers for shipment.
 
 
 5
 Interpretation of an insurance policy is a question of law. Hoffman Const. Co. v. Fred S. James & Co., 836 P.2d 703, 706 (Or.1992). Ambiguous terms are to be construed against the insurer. A term is ambiguous only "if two or more plausible interpretations of that term withstand scrutiny, i.e., continues to be reasonable, after the interpretations are examined in the light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole." Id.
 
 
 6
 The phrase "terminal market" is not defined in the hay endorsement or the policy. We conclude that it is ambiguous in light of the dictionary definition which connotes a market where buying and selling occurs, see Webster's Third New International Dictionary, Unabridged (1986); the fact that the endorsement refers to a market that opens and closes and where a "market value" is set; and the experts' reasonable but conflicting opinions about what the phrase means in the agricultural industry generally as well as in the hay exporting industry more specifically.
 
 
 7
 In addition, T.A.C.X.'s interpretation is reasonable in the context of the agricultural products being insured and the endorsement as a whole. Houston argues to the contrary, on the footing that using a "terminal market" in the export hay industry would almost always permit the insured to pick the market of its choice because of the slight chance that a loss would not occur until the hay reached its final export port. Such a construction, Houston contends, would convert the policy from an indemnity policy into a business income policy.
 
 
 8
 We disagree. Houston knew that T.A.C.X. was engaged in the business of processing and exporting hay; its view that a "terminal market" is the place where hay is "readied" for distribution would effectively limit coverage to the insured's facility no matter what. This would conflict with the endorsement itself, which provides for determining market value at the place of loss only if it is also a "terminal market." Although the T.A.C.X. facility, where the loss occurred, might reasonably be the "terminal market" for the small quantity of off grade hay that it sells at the facility, it is consistent with the endorsement for a port of export to be the "terminal market" for hay that was to be sold elsewhere, after processing, loading, and transporting it to the market where export sales occur.
 
 
 9
 The term is therefore ambiguous within the meaning of Hoffman, and must be construed against Houston. Accordingly, "terminal market" cannot refer to the T.A.C.X. facility (except to the limited extent that hay lost in the fire was off grade).
 
 II
 
 10
 T.A.C.X. further argues that the district court erred in holding that "market value" refers to the replacement cost of the unfinished hay. Although the district court held, and Houston contends, that by modifying "market value" with the phrase "of similar grades and kinds as of the time of loss" the endorsement suggests that valuation should be on an as-is basis, we disagree.
 
 
 11
 The endorsement itself does not define "market value." However, while it does provide that Houston will determine the "value of agricultural products" by the "market value of similar grades and kinds as of the time of loss," that value is "less unincurred expenses " such as commissions, loading and unloading charges, and freight between the place of loss and the terminal market selected by the insured. This suggests a forward-looking valuation at the terminal market, less what it costs to process the hay and get it to that market. Also, the endorsement specifically uses the phrase "actual cash value as of the time and place of loss" to determine the value of "[a]ll other commodities." Thus, Houston's view that "actual cash value" is equivalent to "market value" and to "replacement cost" is undermined by its own use of "actual cash value" as distinguished from "market value" in the same endorsement. Although Houston submits that any value other than "replacement cost" would produce a windfall to T.A.C.X., we don't see how since the endorsement explicitly reduces the market value by unincurred expenses of getting the hay to the terminal market at an export port, and implicitly, as T.A.C.X. concedes, by unincurred processing expenses to prepare the hay for export.
 
 
 12
 Applying the Hoffman test, we conclude that the phrase "market value" is ambiguous and must be construed against Houston. Id. Accordingly, the district court erred in holding that, as a matter of law, the term "terminal market" refers to the replacement cost of the unfinished hay lost in the fire.
 
 III
 
 13
 Given that T.A.C.X. has not yet obtained a recovery in excess of the amount of any tender, it is not entitled to attorney's fees in connection with its appeal pursuant to ORS 742.061. Each side is to bear its own costs.
 
 
 14
 REVERSED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In light of our conclusion that judgment should have been entered in favor of T.A.C.X. on the issues of what "terminal market" and "market value" mean, we do not reach its alternative argument that Houston is estopped to deny that its policy contained "selling price" coverage because of assurances made by Rollins, Hudig Hall, Inc