Argued and submitted October 11, 2006, affirmed May 2, 2007

COUNTRY MUTUAL INSURANCE COMPANY,
*Plaintiff,*

*v.*

Elissa K. WHITE,
*Defendant-Respondent,*

*and*

Richard FORCUM,
personal representative of the
Estate of Hank Walter,
and CC Services, Inc.,
*Defendants,*

*and*

WESTERN PROTECTORS INSURANCE COMPANY,
*Defendant-Appellant.*

Deschutes County Circuit Court
02CV0397MA; A128279

157 P3d 1212

Todd S. Baran argued the cause and filed the briefs for appellant.

Bruce J. Brothers argued the cause for respondent. With him on the brief were Lawrence M. Gorman and Bruce J. Brothers & Associates.

Before Armstrong, Presiding Judge, and Brewer, Chief Judge, and Haselton, Judge.*

BREWER, C. J.

___

* Haselton, J., *vice* Richardson, S. J.

**BREWER, C. J.**

On appeal, defendant insurer challenges a limited judgment in which the trial court declared that defendant's insured, White, was entitled to "stack" the underinsured motorist (UIM) coverage of two motor vehicle insurance policies, one issued by plaintiff, Country Mutual Insurance Co., and the other issued by defendant.[1] Defendant also appeals from a supplemental award of attorney fees in favor of White on the ground that the allocation of White's attorney fees between plaintiff and defendant was erroneous as a matter of law. We affirm.

In December 2001, a vehicle operated by Wiebe collided with a vehicle that was being operated by Walter; Wiebe's vehicle was uninsured. Walter died of injuries suffered in the accident, and his passenger, White, was seriously injured. Plaintiff insured Walter's vehicle. Plaintiff's policy provided UIM coverage for White's injuries. White also was insured by defendant under a personal motor vehicle insurance policy that provides UIM coverage. White submitted UIM benefit claims to both plaintiff and defendant.

Plaintiff conceded that White's claim triggered the UIM coverage in Walter's policy, but asserted that the coverage was subject to a $100,000 limit. White countered that plaintiff's UIM coverage limit was $1 million. Defendant admitted that White's claim triggered its coverage but asserted that plaintiff's coverage was primary and that the $100,000 limit of defendant's UIM coverage did not prorate with, or stack above, plaintiff's UIM coverage.

Plaintiff brought this action for a declaratory judgment that its policy provided only $100,000 in UIM coverage for White and that defendant owed White $100,000 in UIM coverage on a pro rata basis. White filed a counterclaim, seeking $1 million in UIM coverage under plaintiff's policy. Plaintiff then filed a motion for partial summary judgment, seeking a declaration that its UIM coverage limit for White's

---

[1] Defendant and White were both named as defendants in this action for declaratory judgment brought by plaintiff. The dispute between them was litigated through cross-claims. For convenient reference, we refer to defendant insured as "White," and to defendant insurer as "defendant."

claim was $100,000. White filed a cross-motion for summary judgment, seeking a declaration that plaintiff's UIM coverage was subject to a $1 million limit. The trial court granted White's cross-motion for partial summary judgment, declaring that plaintiff's applicable UIM limit was $1 million.

■        White then filed a cross-claim against defendant seeking $100,000 in UIM benefits. Defendant denied coverage based on the following "OTHER INSURANCE" provision in its policy:

> "If there is other similar insurance on a loss covered by this SECTION, we will pay our proportionate share as our limits of liability bear to the total limits of all applicable similar insurance. If this policy and any other policy affording similar insurance apply to the same accident, the maximum limits of liability under all the policies are the highest limits of liability under any one policy. But any insurance we provide with respect to a vehicle you do not own is excess over any other collectible insurance."

White filed a motion for partial summary judgment, seeking a declaration that the $100,000 limit of defendant's UIM coverage stacked[2] above the $1 million limit of UIM coverage in plaintiff's policy. Defendant filed a cross-motion for summary judgment, seeking a declaration that its UIM limits did not stack and that it therefore owed no benefits to White. The trial court granted White's motion for partial summary judgment and denied defendant's cross-motion.

Thereafter, defendant admitted that White's damages would exceed $1.5 million. Based on that admission, and the trial court's summary judgment rulings, White filed a motion for summary judgment on her cross-claim against defendant for $100,000 in UIM benefits. The trial court granted that motion and entered a limited judgment against defendant for $100,000. Plaintiff later agreed to pay

---

[2] "Stacking" refers to the process of obtaining benefits from a second or additional policy on the same claim when recovery on the first policy alone would be inadequate. *VanWormer v. Farmers Ins. Co.*, 171 Or App 450, 452 n 1, 15 P3d 612 (2000). " 'Stacking' coverages generally becomes an issue when multiple policies cover the same claim and same loss and the amount available under one policy is inadequate to satisfy the damages alleged or awarded. Lee R. Russ and Thomas F. Segalla, 3D *Couch on Insurance* § 169.4 (1998)." *Erickson v. Farmers Ins. Co.*, 331 Or 681, 683 n 1, 21 P3d 90 (2001).

$900,000 to White in full satisfaction of its obligation to White under its policy. In exchange for that payment, White agreed not to seek attorney fees from plaintiff.

White then filed a statement for attorney fees and costs against defendant under ORS 742.061. Defendant objected, asserting that its liability for attorney fees could not exceed its proportionate share of liability to White for UIM benefits. The trial court overruled defendant's objection and awarded White 50 percent of her claimed attorney fees.

Defendant makes two assignments of error on appeal. It first argues that the trial court erred in granting White's motion for partial summary judgment and in denying defendant's cross-motion for summary judgment. In its second assignment of error, defendant argues that the trial court erred in awarding attorney fees to White in an amount that was disproportionate to defendant's share of liability to White for UIM benefits. We consider those assignments of error in the order made.

Because the material facts are undisputed, we review the trial court's summary judgment ruling for errors of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). ORS 742.504 requires insurers to include in their policies UIM coverage that "in each instance is no less favorable in any respect to the insured or the beneficiary" than if the statutory coverage provision were reproduced in the policy. ORS 742.504(9)(a) (2003), *amended by* Or Laws 2005, ch 236, § 1,[3] provides:

> "Except as provided in paragraph (c) of this subsection, with respect to bodily injury to an insured while occupying a vehicle not owned by a named insured under this coverage, the insurance under this coverage shall apply only as excess insurance over any other insurance available to such occupant which is similar to this coverage, and this insurance shall then apply only in the amount by which the applicable limit of liability of this coverage exceeds the sum of the applicable limits of liability of all such other insurance."

---

[3] The 2005 amendments to paragraph (9)(a) are not at issue in this case.

Under that provision, a UIM policy can, with respect to bodily injuries suffered by an insured while occupying a nonowned vehicle, provide that its coverage is excess, but only over the combined applicable limits of liability of all other similar insurance coverage. That is, UIM coverage can include both an excess provision and an antistacking clause.

Defendant asserts that, consistently with ORS 742.504(9)(a) (2003), the "other insurance" provision of its policy made plaintiff's UIM coverage primary, because White was injured while occupying a nonowned vehicle. In addition, defendant asserts that the "other insurance" provision limits the maximum amount of UIM coverage to the highest UIM limit of all applicable policies, in this case plaintiff's $1 million coverage limit. It follows, defendant reasons, that because "the limit on the [UIM] coverage for the non-owned vehicle exceeds the limit of [defendant's] policy," it does not owe UIM benefits to White.

White reads the "other insurance" provision of defendant's policy differently, in part, by separately analyzing its three constituent sentences. The first sentence reads, "If there is other similar insurance on a loss covered by this SECTION, we will pay our proportionate share as our limits of liability bear to the total limits of all applicable similar insurance." As it applies to this case, White interprets that sentence as requiring defendant to pay its proportionate share, that is, one-eleventh ($100,000/$1.1 million) of White's damages. Because that share of White's damages, $136,500 (1/11 times $1.5 million), is greater than defendant's UIM coverage limits, White asserts that the first sentence of the provision requires defendant to pay her the full amount of its UIM limits.

The second sentence reads, "If this policy and any other policy affording similar insurance apply to the same accident, the maximum limits of liability under all the policies are the highest limits of liability under any one policy." As White understands it, that sentence, "[w]hile not a picture of clarity, * * * would seem to say that the maximum that an insured may recover is $1,100,000 or maybe $1,000,000. In either event, this sentence promises at a minimum $1,000,000 as the maximum that can be recovered 'under any

one policy.' " Accordingly, White argues, the second sentence also requires payment of defendant's $100,000 coverage limits.

Finally, the third sentence of the provision provides that "any insurance we provide with respect to a vehicle you do not own is excess over any other collectible insurance." White describes the effect of that sentence as follows:

> "This provision plainly states that the $100,000 in coverage provided by [defendant] on a non-owned vehicle is over or in addition to any other collectible insurance. Because the Estate of Hank Walter—which had three beneficiaries—and [White] were sharing [plaintiff's] $1,000,000 policy, this sentence promises [White], an ordinary purchaser of insurance, that she can recover $100,000 in excess of any amount she collected from [plaintiff]."

White concedes that, if defendant's policy had incorporated the antistacking provision of ORS 742.504(9)(a) (2003), defendant would not owe UIM benefits to her. However, based on the foregoing construction of defendant's "other insurance" provision, White argues that ORS 742.504(9)(a) (2003) is irrelevant to the parties' dispute. She reasons that, if defendant had intended its "other insurance" provision to comport with that statute, it would have included the statutory language "and this insurance shall then apply only in the amount by which the applicable limit of liability of this coverage exceeds the sum of the applicable limits of liability of all such other insurance," at the end of the third sentence of the provision. Because defendant failed to do so, plaintiff asserts that the third sentence of the policy is merely an excess coverage provision, and the entire provision does not prohibit recovery in the present circumstances. Relying on the principle that "an insurer may add terms to an Oregon policy that are neutral or more favorable to the insured than those required by the statutes," *Erickson*, 331 Or at 685, White argues that the "other insurance" provision permissibly has provided more favorable coverage than the statute requires, because it does not contain an antistacking provision.

Defendant replies that White's parsing of the "other insurance" provision into discrete segments contravenes the

principle that an insurance policy must be construed as a whole. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469-70, 836 P2d 703 (1992). According to defendant, the fact that the provision has a "pro rata" clause in the first sentence does not trump what it describes, respectively, as the "antistacking" and "excess" insurance clauses in the second and third sentences. In addition, defendant asserts that the second sentence of the provision caps defendant's UIM coverage by the limit of the largest applicable policy, in this case the $1 million limit of plaintiff's similar coverage, not the combined limit of all policies, that is, $1.1 million. Finally, defendant criticizes White's reading of the third sentence in isolation. Defendant urges that the third sentence provides that the UIM coverage is

> "excess subject to the preceding two other insurance provisions, one of which caps coverage at $1,000,000. Reading these provisions together, as the ordinary rules of contract construction require, the policy language prohibits stacking of UIM coverage. That language also makes the UIM coverage for a non-owned car primary where, as here, the insured is injured while occupying a non-owned auto. The non-owned car that had $1,000,000 of UIM coverage. Under [defendant's] policy, [plaintiff's] UIM coverage is primary, and [defendant's] coverage does not stack."

The interpretation of an insurance policy is a question of law. *Hoffman Construction Co.*, 313 Or at 469. A court's goal in interpreting a policy is to determine the intent of the parties. *Id.* (citing *Totten v. New York Life Ins. Co.*, 298 Or 765, 770, 696 P2d 1082 (1985)). Intent is determined by looking to the terms and conditions of the policy. ORS 742.016; *Hoffman Construction Co.*, 313 Or at 469. The policy "must be viewed by its four corners and considered as a whole." *Denton v. International Health & Life*, 270 Or 444, 449-50, 528 P2d 546 (1974). All parts and clauses of the policy must be construed to determine if and how far one clause is modified, limited, or controlled by others. *Id.* at 450.

We conclude that the trial court did not err in rejecting defendant's argument because, in two significant respects, its "other insurance" provision does not comport with ORS 742.504(9)(a) (2003). First, defendant's provision

does not track the antistacking framework set out in the statute. As discussed, the statute authorizes a policy provision that permits recovery for bodily injury suffered by an insured while occupying a nonowned vehicle only to the extent that the subject coverage is in excess of "the sum of the applicable limits of liability of all" other similar insurance coverage. Defendant's self-proclaimed antistacking sentence, on the other hand, merely purports to set the maximum limit of liability under all similar policies at the highest limit provided by any one of such policies. Thus, if several policies providing similar coverage apply to the same loss, defendant's provision fixes the total liability limit at the highest single liability limit; it does not utilize the statutory formula for combining the applicable limits of all similar coverages to determine whether excess recovery is permitted.

■ Second, the antistacking (second) sentence of the "other insurance" provision of the policy does not contextually conform with the excess (third) sentence of that provision. The statute provides that the pertinent excess determination is made with reference to the combined liability limits of all "similar" other insurance coverage. Defendant's excess sentence, by contrast, which contains the provision's only reference to nonowned vehicles, refers to any other "collectible insurance," not similar insurance. Thus, it appears to be an independent excess provision; its only obvious connection with the second sentence is that they coexist in the same policy provision. In short, when read as a whole, the "other insurance" provision does not embody the antistacking provision that is authorized by the statute where an insured suffers bodily injury while occupying a nonowned vehicle.[4]

Defendant's proffered interpretation of the "other insurance" provision is the only ground that it urges for reversal of the trial court's summary judgment rulings. Because we have rejected that interpretation, it follows that

---

[4] Even if we were to conclude that defendant's interpretation of the "other insurance" provision were plausible, White's interpretation also is plausible. That being the case, we would examine the provision in the broader context of the policy as a whole. *Hoffman Construction Co.*, 313 Or at 470. In that regard, the parties have not identified any other provision of the policy that meaningfully informs the resolution of their dispute. Thus, after examining the provision in that broader context, we would construe the provision against defendant, its drafter. *Id.* at 470-71.

the trial court did not err in granting White's motion for partial summary judgment on her cross-claim and in denying defendant's corresponding motion for summary judgment.

In its second assignment of error, defendant asserts that the trial court erred in awarding White a supplemental judgment against defendant for 50 percent, rather than 10 percent, of her attorney fees in this action. According to defendant, because plaintiff was liable to White for 90 percent ($900,000) of her recoverable damages, defendant should be held responsible for no more than a proportionate share, that is, 10 percent of White's attorney fees.[5] Defendant argues that, when two or more insurers of a common insured are obligated to pay attorney fees to the insured under ORS 742.061, the fees must be prorated according to the amount each carrier "has at risk." According to defendant, that premise is "a logical, rational and fair extension and application of the *Lamb-Weston* proration rule that has been used to allocate liability among insurers in numerous contexts."[6]

■ In short, defendant does not specifically challenge the allocation that the trial court made as an abuse of discretion; rather, defendant asserts that, as a matter of law, the trial court was required to allocate only 10 percent of White's attorney fees to an award against defendant. White replies that the trial court made an equitable allocation of the attorney fees that White incurred between her claims against plaintiff and defendant. Although we normally review the amount of an award of attorney fees for abuse of discretion, when a party on appeal challenges the legal basis for the trial court's decision, we review both the conclusion and the award for errors of law. *Stocker v. Keith*, 178 Or App 544, 547, 38 P3d 283 (2002).

■ The governing statute, ORS 742.061, provides, in part:

"(1) Except as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six

___

[5] On appeal, defendant does not challenge the reasonableness of the total amount of fees that White incurred. Accordingly, we do not examine that issue.

[6] Defendant refers to *Lamb-Weston et al v. Ore. Auto. Ins. Co.*, 219 Or 110, 341 P2d 110 (1959).

months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a *reasonable* amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon."

(Emphasis added.) By its terms, the statute makes "reasonableness," not a particular formula, the lodestar for an award of attorney fees to an insured who prevails in a policy claim against his or her insurer. That concept contrasts with the principle on which defendant relies, articulated in *Lamb-Weston et al v. Ore. Auto. Ins. Co.*, 219 Or 110, 341 P2d 110 (1959).

In that case, one of the plaintiffs, Lamb-Weston, Inc., had a tort claim brought against it. Two insurance policies, each with liability limits of $10,000, covered that claim. The other plaintiff, St. Paul Fire and Marine Insurance Company, had issued one of the policies, while the defendant had issued the other. Lamb-Weston settled the tort claim for $3,400, using money that St. Paul provided in return for a loan receipt. Thereafter, Lamb-Weston and St. Paul sued the defendant, seeking to recover the amount that they had paid in the settlement. *Lamb-Weston*, 219 Or at 113-15.

The issue in *Lamb-Weston* was how to determine which insurer should pay when both covered the same loss. Each insurer had tried to anticipate the problem in its policy; each policy contained an "other insurance" clause whose purpose was to require another insurer to pay first. The trial court found in favor of St. Paul on the ground that the defendant was the primary insurer. On appeal, the defendant argued that, contrary to the trial court's conclusion, St. Paul's coverage was primary. For that reason, the defendant insisted, it was not liable until St. Paul paid its policy limits, which it had not done. After discussing a number of relevant cases, the Supreme Court rejected the approach of attempting to find one insurer to be primary and another secondary. It concluded that attempting to apply the "other insurance" provision of one policy while rejecting that of another was "like pursuing a will o' the wisp." *Id.* at 122. There simply was no legal basis for concluding that one policy should yield to

the other. The only way to resolve the dilemma was to require each insurer to contribute to the insured's loss in proportion to its share of the total policy limits. Because in *Lamb-Weston* the two insurers' policy limits were identical, the defendant was liable for one-half of the settlement, and St. Paul was liable for the other half. *Id.* at 122, 128-29.

*Lamb-Weston*, thus, was essentially a dispute between insurance companies about which should pay the loss. Although its fixed proration principle is useful in apportioning responsibility between insurers for common obligations to the same insured, it is not gloss on ORS 742.061, which implicates a fundamentally different set of considerations. *See Cascade Corp. v. American Home Assurance Co.*, 206 Or App 1, 9-10, 135 P3d 450, *rev allowed*, 341 Or 579 (2006) (*Lamb-Weston* applies to claims between insurers, not disputes between insurers and insureds).

In a written opinion, the trial court explained its reasons for awarding White a judgment against defendant for one-half, rather than 10 percent, of her attorney fees:

> "This is a unique case that presents difficult and complex issues with respect to the claim for attorney fees asserted against [defendant]. The court rejects the argument asserted by [defendant] that [White] should be entitled to recover only 10 percent of her attorney fees from [defendant] because [defendant] paid 10 percent of the total amount recovered by [White]. The court finds that there must be a rational basis for such an allocation of attorney fees and that this percentage formula is not rational under the circumstances of this case. * * *

> "* * * Based upon the record presented, it is not possible for this court to make specific findings with respect to all of the legal work that was related solely to the claim against [defendant] and the legal work that may have been related solely to the claim against [plaintiff]. Much of the legal work was necessary with respect to both the claims against [defendant] and [plaintiff].

> "ORS 742.061 requires that this court determine a reasonable amount to be fixed by the court as attorney fees with respect to the claim against [defendant]. After considering all the relevant factors in this case, this court finds that [defendant] should be required to pay to [White] 50 percent

of the attorney fees set forth in [White's] statement for attorney fees pursuant to ORS 742.061."

(Underscoring omitted.)

The trial court's decision reflects the fact that, irrespective of the difference in their policy limits, in order to prevail against either plaintiff or defendant, White was required to prove that Wiebe was liable for her injuries and the amount of damages that she had suffered. Also irrespective of the difference in policy limits, White's claims against defendant presented complex legal issues, including those addressed in defendant's first assignment of error on appeal. Finally, as discussed, defendant does not specifically challenge the allocation that the trial court made as an abuse of discretion; rather, defendant asserts that, as a matter of law, the trial court was required to allocate only 10 percent of White's attorney fees to an award against defendant. Because that assertion is erroneous and, apart from that assertion, defendant has not shown that the allocation of attorney fees that the trial court made was unreasonable, we will not disturb the award.

Affirmed.