Argued and submitted November 28, 2007, reversed and remanded
August 13, 2008

John M. UNO, M.D., P.C.,
*Plaintiff-Appellant,*

*v.*

PROVIDENT LIFE & ACCIDENT
INSURANCE COMPANY,
a corporation,
*Defendant-Respondent.*

Coos County Circuit Court
06CV0163; A133991

191 P3d 738

William A. McDaniel argued the cause for appellant. With him on the briefs was Whitty, Littlefield, McDaniel & Bodkin, LLP.

R. Daniel Lindahl argued the cause for respondent. With him on the brief were Robert B. Miller and Bullivant Houser Bailey, PC.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Plaintiff, a disabled physician, appeals a judgment in favor of his insurer, defendant Provident Life & Accident Insurance Company (Provident). Provident issued plaintiff an overhead expense disability insurance policy. Plaintiff contends that the trial court erred in interpreting that policy to preclude coverage when plaintiff was not engaged in the practice of medicine. We disagree with the trial court's construction of the policy and reverse the entry of summary judgment in favor of Provident.

Plaintiff is a physician who specializes in the practice of urology. In 1986, plaintiff purchased an overhead expense disability insurance policy from Provident. By the terms of the policy, Provident promised plaintiff to "pay benefits during a Period of Disability for Covered Overhead Expenses which accrue while you are totally disabled after the Elimination Period." The policy defined "Period of Disability" to include a period of "Total Disability (plus any Partial Disability which follows and for which benefits are paid)." "Total Disability" was defined, in turn, to mean

"* * * that due to Injuries or Sickness:

"1.   you are not able to perform the substantial and material duties of your occupation; and

"2.   you are receiving care by a Physician which is appropriate for the condition causing the disability."

"Partial Disability" means conditions where the insured is unable to perform one or more "substantial and material daily business duties," or unable to do "usual daily business duties for as much time as it would normally take * * * to do them" and is under the appropriate care of a physician.

In July 2004, plaintiff became totally disabled and ceased treating patients. He placed his medical license in retirement status and cancelled his medical malpractice insurance. Plaintiff hoped to recover from his disability, reactivate his medical license, and resume his practice. Accordingly, plaintiff continued to maintain his medical office, employing a part-time employee for the limited purposes of collecting accounts receivable, copying and mailing patient

charts, paying bills, and storing financial and patient records.

In April 2005, plaintiff made a claim for benefits under the policy for expenses incurred in maintaining his downsized medical practice. Provident accepted the claim and paid approximately six months of benefits. Thereafter, Provident declined further payments on the basis that plaintiff's overhead expenses were not "covered overhead expenses" as defined by the policy. Plaintiff then brought an action against Provident for breach of contract.

■     The parties' dispute concerns whether the office expenses were "covered overhead expenses." As defined by the policy, "covered overhead expenses" are "items of expense incurred by you which are usual and customary in the operation of your business or profession. They must be generally accepted as tax deductible business overhead expenses." The trial court concluded that the office expenses did not qualify as "covered overhead expenses" because they were not "incurred * * * in the operation of [plaintiff's] business or profession." To so qualify, the trial court reasoned, plaintiff must be "currently active in the operation of a profession involving the medical practice of urology" in order for the benefits to be payable. Because it concluded that plaintiff was not so engaged, the trial court entered summary judgment in favor of Provident.

On appeal, plaintiff contends that "there are more facets to the operation of a urology practice than simply seeing patients," therefore, maintenance of his office for collections, billing, and storing patient files is part of the total operation of the business of his urology practice. Plaintiff adds that any ambiguity in the scope of covered expenses is to be resolved against the insurer. Conversely, Provident contends that plaintiff's business is "practicing medicine" and because plaintiff is "not treating patients, perform[ing] surgery, or conduct[ing] hospital rounds," he is not operating a business or profession for which benefits are owed under the terms of the policy. In Provident's view, plaintiff is essentially operating a collection agency, expenditures for which are not a payable benefit under the insurance policy.

Under the policy, plaintiff is entitled to benefits if he incurred "covered overhead expenses" during a period of "total disability." The parties do not dispute that plaintiff was totally disabled, as defined by the policy, during the period of the claim. Nor do they differ on whether the "items of expenses" here—the employee salaries, office rent and other costs of collecting accounts receivable, patient correspondence, and record keeping—are the types of expense that fit within the definition of "covered overhead expense" under the policy. The policy specifically lists "employees' salaries," "rent," and "accounting, billing and collection service fees" as types of qualified overhead expenses. Those are the "items of expense" plaintiff incurred. The policy also lists specific items that are not included in the definition of "covered overhead expenses": certain salaries, additions to inventory, extraordinary expenses, more than proportionately shared overhead, overhead expenses reimbursable under another policy. Those excluded expenses are not the type of "items of expense" plaintiff incurred.[1]

---

[1] The policy provides:

"Covered Overhead Expense means items of expense incurred by you which are usual and customary in the operation of your business or profession. They must be generally accepted as tax deductible business overhead expenses. They include but are not limited to items such as:

"1.   employees' salaries (except as excluded below);
"2.   charges for utilities such as electricity, telephone, heat and water;
"3.   either a) rent, or b) an equivalent rental cost for space which you occupy in a building you own and which space you use in the operation of your business or profession, consisting of taxes, maintenance and mortgage interest payments plus the greater of scheduled depreciation for tax purposes or scheduled mortgage principal payments;
"4.   for furniture, equipment and implements of your business or profession; either a) leasing cost, or b) an equivalent cost consisting of taxes, maintenance and interest payments plus the greater of scheduled depreciation for tax purposes or scheduled principal payments;
"5.   laundry, janitorial and maintenance services;
"6.   business insurance premiums; and
"7.   accounting, billing and collection service fees.

"Covered Overhead Expenses do not include:
"1.   salaries, fees, drawing accounts, profits or other remuneration for:
      "a.   you;
      "b.   any person sharing your profession or occupation; or
      "c.   any member of your profession or occupation; or
      "d.   any person employed to perform your duties;
"2.   additions to inventory or the costs of goods or merchandise purchased for sale;

Instead, the parties differ on whether costs associated with continuing plaintiff's business during a period of total disability were "items of expense incurred * * * in the operation of [plaintiff's] business or profession" and therefore were "covered overhead expenses" under the policy. Plaintiff contends that those business continuation expenses are part of the "operation of [plaintiff's] business or profession." Provident argues that plaintiff is not "operating" his business unless he is practicing medicine. However, Provident does not specify the types of expenses that could be incurred after an insured becomes totally disabled and still qualify as "covered overhead expenses" under the policy.

■■■ The interpretation of the meaning of "operation of [a] business or profession" is a question of law. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992). The governing rule of the construction of an insurance agreement is to ascertain the intent of the parties. *Totten v. New York Life Ins. Co.*, 298 Or 765, 770, 696 P2d 1082 (1985). That analysis begins with the terms and conditions of the policy. If those terms are not defined in the policy, we look to their plain meaning. *Hoffman*, 313 Or at 469-70. If, after reviewing the plain meaning in context, the term or terms are susceptible to more than one plausible interpretation, the policy will be construed against the drafter. *Id.*

We conclude that the plain meaning of "operation of [a] business or profession" in the context of the insurance policy includes performing actions to continue plaintiff's business, without regard to whether patients are still being treated. The meaning of "operation" is "**1 a** * * * a doing or performing esp. of action: * * * **b:** a doing or performing of a practical work or of something involving practical application of principles or processes often experimentally or as part of a

---

"3. any kind of expense for which you were not liable in the normal course of your business or profession prior to a covered Total Disability;

"4. more than your share of expenses when they are shared with one or more persons; and

"5. overhead expenses which would otherwise be covered were it not for such expenses being reimbursable under another business overhead expense policy or disability policy issued prior to the Effective Date of this policy.

"An expense covering more than one month will be prorated to determine the expense for one month."

series of actions." *Webster's Third New Int'l Dictionary* 1581 (unabridged ed 2002) "Business" is defined as "**1 a** (1) * * * purposeful activity **:** activity directed toward some end * * * (2): an activity engaged in as normal, logical, or inevitable and usu. extending over a considerable period of time." *Id.* at 302. Finally, "profession" is defined as "**4 a:** a calling requiring specialized knowledge and often long and intensive preparation * * *." *Id.* at 1811. Under those commonly understood definitions, business continuation activities are an "operation" in the sense that they are the performance of actions and the doing of practical work. The work is a "business" or part of plaintiff's "profession" because it is directed to some purposive end, the continuance of a professional practice, and because the billing and collection efforts continue normal activities that were part of plaintiff's professional practice. Thus, "covered overhead expenses" includes those type of expenses incurred in the continuation of the business or profession of the disabled insured.

The context of the rest of the policy supports an interpretation that "covered overhead expenses" includes business continuation expenses of a disabled insured and not just more immediate expenses. There is no specific exclusion for business continuation expenses. Just as importantly, the policy contemplates the incurring of expenses by a disabled insured over a long period of time. First, the benefits do not start immediately after an insured becomes disabled. The policy provides that benefits are not payable for "Covered Overhead Expenses which accrue during an Elimination Period." An "elimination period" is the time of total disability that must elapse before benefits become payable. (The elimination period in plaintiff's policy was 90 days.) Second, the policy limits the monthly benefit to $10,000 and the maximum benefit to $120,000. It thus contemplates scenarios where benefits would be paid for a period of total disability that lasted a year or longer. Expenses for that length of time are likely to be those incurred to continue a business or profession.

Finally, if an exclusion were intended for expenses incurred while an insured physician was not licensed or covered by malpractice insurance, the policy could have plainly

said so. Based on the text of the definition of "covered overhead expenses," the failure to exclude business continuation expenses from that definition, and the context of the remaining portions of the policy, we conclude that the policy required the payment of business continuation expenses as part of "covered overhead expenses."

Nonetheless, Provident relies on *Richardson v. Guardian Life Ins. Co.*, 161 Or App 615, 984 P2d 917, *rev den*, 329 Or 553 (1999), to argue that the policy covers only overhead expenses incurred while "operating a medical practice" in the sense of "examining patients, performing surgeries, or making hospital rounds." However, we do not view *Richardson* as helpful to Provident's case because *Richardson* determined only that similar text in an overhead expense disability policy did not cover expenses incurred after a business was sold, expenses that obviously were not business *continuation* expenses.[2]

In *Richardson*, the plaintiff, a dentist and sole shareholder of his incorporated dentistry practice, brought an action against his insurer for nonpayment under two business overhead disability insurance policies. The policies provided coverage for regular business expenses "incur[red] in the *conduct* of your business or profession" in the event the plaintiff became disabled. *Id.* at 617 (emphasis added). "Total disability" was defined as "the inability 'to perform the major duties of your occupation.' " *Id.* at 618.

The plaintiff's health deteriorated to a point where he could no longer practice dentistry, so he sold his stock in the professional corporation to one of his dentist employees and agreed in the stock purchase agreement to pay one year of the overhead expenses of the business. The plaintiff then submitted a notice of disability claim to his insurer. After denial of the claim, plaintiff filed a breach of contract action

---

[2] Other cases relied on by Provident are not binding on this court and suffer from the same factual difference. *See, e.g.*, *Wilson v. Monarch Life Ins. Co.*, 971 F2d 312 (9th Cir 1992) (chiropractor did not "conduct" his practice after its sale); *Principal Mutual Life Ins. Co. v. Toranto*, 1997 WL 279751, *on recons*, 1997 WL 361872 (ND Tex 1997) (surgeon no longer incurred overhead expenses after the sale of his practice).

against the insurer to recover, among other things, the overhead expenses he had agreed to pay on behalf of his business successor. The trial court granted summary judgment in favor of the insurer on the breach of contract claim, finding that the policy did not cover the plaintiff's claim for business overhead expenses because he was *not conducting a business* after the sale of his corporation. This court agreed, holding that the plaintiff "did not conduct a business or profession *after he sold his stock* and, therefore, the policies did not cover his payment of overhead expenses." *Id.* at 623 (emphasis added). Notably, we did not decide whether the plaintiff conducted a business or profession after his disability and *before* he sold his stock, a situation more closely analogous to this case.

The determination of whether the plaintiff in *Richardson* was due benefits under his policies turned on the fact that he had sold his practice. The court concluded that he could not be "conducting" a business if he was no longer in that business. In contrast to the plaintiff in *Richardson*, plaintiff here still owns his medical practice and intends to continue it in the future. Thus, *Richardson* does not alter our conclusion that plaintiff's business continuation expenses were part of "covered overhead expenses" under the policy.

Based on the above, we conclude that the trial court erred in granting summary judgment to Provident and in determining that expenses incurred in the operation of plaintiff's business could not include business continuation expenses and must include only those expenses resulting from the treatment of patients. However, our finding of error does not imply any ultimate success in plaintiff's claim. Again, the policy defined "covered overhead expense" as "items of expense incurred by [the insured] which are *usual and customary* in the operation of [the insured's] business or profession." (Emphasis added.) As we have said, business continuation expenses are categorically the type of expenses that are "incurred * * * in the operation of [a disabled insured's] business or profession." What is less clear is whether the incurring of business continuation expenses by plaintiff for a long period after his disability was "usual and customary" in the practice of urology, given his lack of recovery and the ongoing loss of patients to other physicians. That

factual issue was not decided in the summary judgment proceedings.

Reversed and remanded.