147 P.3d 329 (2006)
341 Or. 642
Krystal HOLLOWAY, Respondent on Review,
v.
REPUBLIC INDEMNITY COMPANY OF AMERICA, Petitioner on Review.
(CC02-02323-CV; CA A123072; SC S52951).
Supreme Court of Oregon.
Argued and Submitted September 7, 2006.
Decided November 16, 2006.
I. Franklin Hunsaker, Beaverton, argued the cause for petitioner on review. With him on the briefs were Paul J. Killion and Michael J. Dickman, Duane Morris LLP, San Francisco, and Bernard S. Moore, Frohnmayer, Deatherage, Pratt, Jamieson, Clarke & Moore PC, Medford.
Karen E. Duncan and Donald E. Oliver, Oliver & Duncan, Redmond, argued the cause and filed the briefs for respondent on review.
Before DE MUNIZ, Chief Justice, and CARSON, GILLETTE, DURHAM, BALMER, and KISTLER, Justices.[**]
CARSON, J.
The central issue in this insurance contract case is whether an anti-assignment clause providing that "[y]our rights or duties under this policy may not be transferred without our written consent[]" is ambiguous and thus should be construed against its drafter. A trial court held that the clause was not ambiguous. The Court of Appeals reversed. Holloway v. Republic Indemnity Co. of America, 201 Or.App. 376, 382, 119 P.3d 239 (2005). For the reasons that follow, we reverse the decision of the Court of Appeals and affirm the judgment of the trial court.
Fields (insured) owned and operated a restaurant as a sole proprietorship under the name "Loree's Chalet." During 1997, Republic Indemnity Company of America (Republic) undertook to insure the insured and issued her a "Workers' Compensation and Employers' Liability Policy." That insurance policy contained the following provisions:
"GENERAL SECTION
"A. The Policy
"[This policy] is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the *331 insurer named on the Information Page). * * *[[1]]
"B. Who Is Insured
"You are insured if you are an employer named in Item 1 of the Information Page. * * *
"* * * * *
"PART TWO-EMPLOYERS LIABILITY INSURANCE
"* * * * *
"B. We Will Pay
"We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.
"* * * * *
"C. Exclusions
"This insurance does not cover:
"* * * * *
"5. bodily injury intentionally caused or aggravated by you; [or]
"* * * * *
"7. damages arising out of * * * harassment, * * * discrimination against or termination of any employee * * *[.]
"* * * * *
"D. We Will Defend
"We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. * * *
"We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. * * *
"* * * * *
"PART SIX-CONDITIONS
"* * * * *
"C. Transfer of Your Rights and Duties
"Your rights or duties under this policy may not be transferred without our written consent."
While Republic's insurance policy was in effect, plaintiff below (Holloway) began working as a waitress for the insured's restaurant. The insured also employed Zullig as a manager and bartender for the restaurant. According to Holloway,[2] immediately after Zullig began working at the restaurant, he "approached [Holloway], made lewd and vulgar comments, physically interfered with [Holloway's] normal movements within her work environment, stated his intentions to engage in sexual activities with [Holloway], and subjected [Holloway] to unwelcome sexual advances and physical contact." Also, "Zullig engaged in a pattern of verbal sexual comments and innuendos designed to annoy, harass, intimidate and demean [Holloway], including explicit sexual and abusive language." Additionally, "Zullig obtained [Holloway's] home telephone number from her employment files * * * and began harassing her at home." "Zullig came into [Holloway's] house in a drunken state on more than one occasion, refused to leave when asked, kissed her against her will and told her he intended to have sexual intercourse with her whether she wanted to or not." Finally,
"Zullig gave [Holloway], over her objection, gifts of jewelry that * * * were stolen from [the insured's] jewelry display and sales case located in the restaurant. This made [Holloway] anxious and fearful that * * * Zullig intended to gain control over her by threatening to report that [Holloway] had stolen the items from the display case."
Holloway reported Zullig's conduct to the insured on several occasions, but the insured took no action to investigate or correct Zullig's harassing conduct. According to Holloway, Zullig's conduct was "known to, authorized and ratified by" the insured, and the insured "deliberately created, maintained and permitted the harassment with the specific intention that it would force [Holloway] to resign." In fact, Holloway eventually did resign, allegedly due to Zullig's harassment.
Holloway subsequently brought an action against the insured, alleging employment discrimination by means of sexual harassment, *332 constructive discharge, and intentional infliction of emotional distress. The insured notified Republic of the action and tendered her defense to Republic. Republic, however refused to defend the insured.
Following that refusal, the insured and Holloway reached a settlement agreement. Under that agreement, the insured and Holloway stipulated to the entry of a $50,000 judgment against the insured, and Holloway entered into a covenant not to execute on the judgment against the insured for more than $6,000. The insured paid Holloway the agreed-upon $6,000, and Holloway entered a satisfaction of the judgment as to the insured. Also under that settlement agreement, the insured purported to assign to Holloway all the insured's rights to any claim that she might have against Republic for breach of the insurance contract or for indemnity.
Upon receiving that purported assignment, Holloway brought the present breach of contract action against Republic, asserting that Republic had breached its duty to defend the insured and its duty to indemnify the insured. Through that action, Holloway sought to recover from Republic the insured's attorney fees and costs incurred while defending against Holloway's tort action, Holloway's attorney fees and costs incurred in her tort action against the insured, the remaining unsatisfied part of the judgment that she had received against the insured ($44,000), and Holloway's attorney fees and costs incurred in the contract action against Republic.
Holloway and Republic filed cross-motions for summary judgment. In support of its motion, Republic presented two arguments. First, Republic claimed that it had no duty to defend or indemnify the insured because, under two exclusions in the insurance policy, the tortious conduct that Holloway had alleged in her action against the insured was not covered by Republic's policy. Specifically, Republic asserted that the conduct alleged in Holloway's action against the insured fell within both the intentional acts exclusion and the harassment, discrimination, and termination exclusion of the insurance policy. According to Republic, because the alleged conduct was not covered under the terms of the insurance policy, Republic had no duty to defend or indemnify. Second, Republic maintained that, in any event, Holloway had acquired no rights from the insured under the purported assignment that was part of the settlement agreement between Holloway and the insured.
In its letter opinion, the trial court agreed with Republic's first argument and held that Republic had no duty to defend or indemnify. Accordingly, the trial court granted Republic's motion and denied Holloway's motion. The trial court did not address Republic's second argument, apparently because it found Republic's first argument to be persuasive and dispositive.
Holloway appealed the trial court's judgment, arguing that the trial court had erred in granting Republic's motion and in denying Holloway's motion. The Court of Appeals agreed with Holloway, holding that Holloway's complaint against the insured alleged conduct that did not fall within the insurance policy's exclusions and that the purported assignment to Holloway was valid. Holloway, 201 Or.App. at 382, 391, 119 P.3d 239.
As to the Court of Appeals' first conclusion, that court examined the text of the insurance policy's exclusions and the nature of the factual allegations that Holloway had made in her complaint against the insured. Id. at 384-91, 119 P.3d 239. Ultimately, the Court of Appeals reasoned that Holloway's complaint alleged an unpleaded battery claim that did not fall within the insurance policy's exclusions. Id. at 390-91, 119 P.3d 239.
Regarding its second conclusion, the Court of Appeals explained:
"[T]he insurance policy at issue in this case provides that the `rights or duties under this policy may not be transferred without [Republic's] written consent.' Nothing in the policy states what `rights or duties' may not be `transferred.' The `rights or duties' could refer to pre-loss rights or duties, post-loss rights or duties, or both. We must choose among those understandings.

*333 "If the provision prohibits the assignment of pre-loss rights or duties, then it would `protect the insurer against increased risks of loss resulting from an assignment of coverage to a new insured.' Conrad Brothers v. John Deere Ins. Co., 640 N.W.2d 231, 237 (Iowa 2001). The insurer has bargained to accept the risk presented by the particular insured with whom it has contracted, and it makes sense for the insurer to seek to protect itself from the unknown risks to which an assignee insured might expose it. However, it would also be reasonable for the policy to insulate the insured from exposure to claims for indemnification from third-party claimants after a loss has occurred. The context of the policy provides little guidance, and, on the whole, it would be reasonable to read the provision to apply to either pre-loss or post-loss rights and duties, or both. In short, the provision is ambiguous.
"Because the provision is ambiguous, we construe it against its drafter and conclude that it prohibits only the assignment of pre-loss rights and duties. Our conclusion is consistent with what appears to be the majority rule. See, e.g., Conrad Brothers, 640 N.W.2d at 236-38 (citing cases); Insurance, 44 Am. Jur. 2d 102 § 801 (2003) (`In the absence of an express provision to the contrary, provisions relating to the consent of the insurer to an assignment do not relate to assignments after loss or to assignments as collateral security.' (footnotes omitted.)). But see High-Tech-Enterprises, Inc. v. Gen. Accident Ins. Co., 430 Pa.Super. 605, 635 A.2d 639 (1993) (holding that assignment of insured's rights to coverage for property damage under automobile insurance policy to automobile repairer was invalid because of anti-assignment provision). Consequently, nothing in the policy affects the validity or effectiveness of the assignment, and we reject [Republic's] argument on that point."
Id. at 381-82, 119 P.3d 239. Based upon those two conclusions, the Court of Appeals held that the trial court had erred in granting Republic's motion for summary judgment and in denying Holloway's motion for summary judgment.[3]Id. at 391, 119 P.3d 239. We allowed review.
On review, the issues before us are whether Holloway alleged facts in her complaint against the insured sufficient to trigger Republic's duty to defend or duty to indemnify and whether the purported assignment from the insured to Holloway was valid. However, our analysis begins, and ends, with our decision respecting whether the purported assignment from the insured to Holloway was valid. Because we hold that it was not, we need not decide the issue respecting the allegations in Holloway's complaint.
Deciding the validity of the purported assignment in this case turns on the proper interpretation of the anti-assignment clause contained in the insurance policy between Republic and the insured. Interpretation of an insurance policy is a question of law, and our task is to ascertain the intention of the parties to the insurance policy. Hoffman Construction Co. v. Fred S. James & Co., 313 Or. 464, 469, 836 P.2d 703 (1992). "We determine the intention of the parties based on the terms and conditions of the insurance policy." Id. (citing ORS 742.016).
If an insurance policy explicitly defines the phrase in question, we apply that definition. See Groshong v. Mutual of Enumclaw Ins. Co., 329 Or. 303, 307-08, 985 P.2d 1284 (1999) (so indicating). If the policy does not define the phrase in question, "we resort to various aids of interpretation to discern the parties' intended meaning." Id. Under that interpretive framework, we first consider whether the phrase in question has a plain meaning, i.e., whether it "is susceptible to only one plausible interpretation." Id. at 308, 985 P.2d 1284. If the phrase in question has a plain meaning, we will apply that meaning and conduct no further analysis. Id. If the phrase in question has more than one plausible interpretation, we will proceed to the second interpretive aid. Id. at *334 312, 985 P.2d 1284. "That is, we examine the phrase in light of `the particular context in which that [phrase] is used in the policy and the broader context of the policy as a whole.'" Id. (quoting Hoffman, 313 Or. at 470, 836 P.2d 703 (altered text in original)). "If the ambiguity remains after the court has engaged in those analytical exercises, then `any reasonable doubt as to the intended meaning of such [a] term[] will be resolved against the insurance company * * *.'" North Pacific Ins. Co. v. Hamilton, 332 Or. 20, 25, 22 P.3d 739 (2001) (quoting, among other cases, Hoffman, 313 Or. at 470, 836 P.2d 703 (altered text in original)). However, as this court has stated consistently, "a term is ambiguous * * * only if two or more plausible interpretations of that term withstand scrutiny, i.e., continue[] to be reasonable," despite our resort to the interpretive aids outlined above. Hoffman, 313 Or. at 470, 836 P.2d 703 (emphasis in original).
The phrase in question here  the text of the insurance policy's anti-assignment clause  provides that "[y]our rights or duties under this policy may not be transferred without our written consent." The policy does not provide an explicit definition for the phrase "rights or duties"; therefore, we must decide whether that phrase has a plain meaning.
As discussed above, the Court of Appeals concluded that "[n]othing in the policy states what `rights or duties' may not be `transferred.' The `rights or duties' could refer to pre-loss rights or duties, post-loss rights or duties, or both." Holloway, 201 Or.App. at 381, 119 P.3d 239. The Court of Appeals further concluded that the "context of the policy provide[d] little guidance, and, on the whole, it would be reasonable to read the provision to apply to either pre-loss or post-loss rights and duties, or both." Id. at 382, 119 P.3d 239. Republic argues that the Court of Appeals erred in reaching those conclusions, and we agree. Contrary to the Court of Appeals' assertion, the policy makes perfectly clear which "rights or duties" may not be assigned.
The anti-assignment clause specifically states that "[y]our rights or duties" may not be assigned. (Emphasis added.) The only plausible interpretation of the word "your" is that it refers to the insured. That conclusion is supported by the text of the policy. Specifically, the policy provides that "[i]t is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page)." The policy further provides that "[y]ou are insured if you are an employer named in Item 1 of the Information Page." The policy consistently uses the words "you" and "your" to refer to the insured. Thus, the anti-assignment clause restricts the assignment of the insured's "rights or duties."
Reaching that conclusion does not end our analysis, however, because we have not addressed the Court of Appeals' "pre-loss" and "post-loss" dichotomy. Nevertheless, as we shall see, we conclude that that court's interpretation is not reasonable on the face of the contractual text or in the broader context of the policy as a whole.
The anti-assignment clause here is worded broadly; it contains no exceptions or qualifications. It explicitly prohibits, without Republic's written consent, the assignment of "[y]our [the insured's] rights or duties under this policy[.]" According to those terms, the clause applies to whatever rights or duties the insured may have under the policy. Nothing in the clause suggests a limitation to pre-loss rights or duties or provides an exception for post-loss rights or duties. Reading such an exception into the policy would not be reasonable and would "insert what has been omitted." See ORS 42.230 (providing that "[i]n the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted * * *").
Pacific First Bank v. New Morgan Park Corp., 319 Or. 342, 876 P.2d 761 (1994), illustrates our point. In that case, this court considered the proper interpretation of a lease anti-assignment clause. Id. at 345, 876 P.2d 761. The anti-assignment clause, in part, provided that "Tenant shall not assign, sell, mortgage, pledge, or in any manner transfer the Lease or any interest herein whether voluntary or involuntary or by operation *335 of law * * * without the prior written consent of Landlord." Id. (ellipsis in original). On review, the tenant argued that it had not violated the anti-assignment clause's prohibition when it merged with and became a different corporate entity because the anti-assignment clause did not refer expressly to mergers. Id. at 349, 876 P.2d 761. This court rejected that argument, explaining that the anti-assignment clause, "which [was] worded in a broad and all-encompassing manner, [did] not exclude mergers." Id. at 349, 876 P.2d 761. Therefore, according to Pacific First Bank, reading an exclusion into a broadly worded anti-assignment clause based upon the clause's silence regarding its application to a particular situation would be an unreasonable interpretation.
In sum, the only reasonable interpretation of the anti-assignment clause at issue in this case is that it prohibits the assignment of the insured's rights or duties without regard to whether they arose pre-loss or post-loss. In other words, none of the insured's rights or duties could be assigned without Republic's written consent.
In reaching its conclusion that the anti-assignment clause was ambiguous as to whether it referred to pre-loss or post-loss rights or duties, the Court of Appeals cited a number of authorities that the court asserted supported its interpretation. See Holloway, 201 Or.App. at 382, 119 P.3d 239 (citing Conrad Brothers, 640 N.W.2d at 237, and Insurance, 44 Am. Jur. 2d 102 § 801 (2003)). According to the Court of Appeals, the majority rule for interpreting insurance policy anti-assignment clauses is that those clauses prohibit the assignment of only pre-loss rights or duties. Id. at 382, 119 P.3d 239. In her brief, Holloway extensively relies upon those same authorities to support her claim that the anti-assignment clause is ambiguous. Holloway also directs our attention to National Memorial Serv. v. Metropolitan Life Ins. Co., 159 Pa.Super. 292, 48 A.2d 143 (1946), and Egger v. Gulf Ins. Co., 864 A.2d 1234 (Pa.Super.2004). Although those authorities may support Holloway's argument, the courts in Conrad Brothers, National Memorial, and Egger did not follow this court's analytical approach to insurance contract construction, set out above. For that reason, we find those decisions unpersuasive. See Hoffman, 313 Or. at 475-77, 836 P.2d 703 (rejecting use of cases from other jurisdictions, because analyses in those cases differed from this court's established case law).[4]
When considered in context, the anti-assignment clause in question is not ambiguous. The Court of Appeals therefore erred in declaring that the clause was ambiguous and in construing the anti-assignment clause against its drafter, Republic. Applying the proper interpretation of the anti-assignment clause, we conclude that that clause prohibited the assignment of rights from the insured to Holloway because the insured had not obtained Republic's written consent. Because the assignment was not valid, Holloway obtained no rights against Republic. The trial court did not err in granting Republic's motion for summary judgment and in denying Holloway's motion for summary judgment. The contrary conclusion of the Court of Appeals was erroneous.
The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.
NOTES
[**] Riggs, J., retired September 30, 2006, and did not participate in the consideration or decision of this case. Walters, J., did not participate in the consideration or decision of this case.
[1] The policy's information page listed the insured as the employer and Republic as the insurer.
[2] Holloway made the allegations set out in the text in the complaint by which she initiated the action against the insured.
[3] Ultimately, the Court of Appeals reversed the trial court's judgment on Republic's duty to defend and reversed and remanded the trial court's judgment on Republic's duty to indemnify. Holloway v. Republic Indemnity Co. of America, 201 Or.App. 376, 392, 119 P.3d 239 (2005).
[4] We recognize, of course, that even unambiguous contract provisions may be held invalid when they are inconsistent with statutes or with certain overriding public policies. See ORS 72.2100(2), (4) (Uniform Commercial Code provisions limiting certain anti-assignment clauses in contracts for the sale of goods). Holloway, however, identifies no statute that would invalidate the anti-assignment provisions of the insurance contract here, and our prior cases provide no basis for arguing that an anti-assignment provision in a commercial insurance contract is unenforceable.