Argued and submitted April 5, 2016, reversed and remanded April 26, 2017

**REPWEST INSURANCE COMPANY,**
fka Republic Western Insurance Company,
an Arizona corporation,
*Plaintiff-Respondent,*

*v.*

**PORTLAND ADVENTIST MEDICAL CENTER,**
an Oregon corporation,
*Defendant-Appellant.*

Multnomah County Circuit Court
120101077; A156948

396 P3d 946

Matthew J. Kalmanson argued the cause for appellant. With him on the briefs was Hart Wagner LLP.

R. Daniel Lindahl argued the cause for respondent. With him on the brief were Marianne Ghim and Bullivant Houser Bailey, PC, and Troy B. Froderman and Polsinelli PC.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

## TOOKEY, J.

Defendant Portland Adventist Medical Center appeals from a declaratory judgment entered in favor of its workers' compensation excess insurer, plaintiff Repwest Insurance Company. The parties had disputed whether Portland Adventist's insurance policy with Repwest covered excess payments Portland Adventist had made to an employee for workers' compensation benefits for aggravations of injuries the employee had sustained in 1992, during the policy period. To resolve that dispute, Repwest filed this action for a declaration that Portland Adventist's claim was not covered by the policy. Based on its interpretation of the policy, the trial court submitted the case to a jury to decide whether the employee's 1992 injuries were a major contributing cause of Portland Adventist's workers' compensation obligations to the employee. The jury answered "no" to that question, and the trial court entered a declaratory judgment for Repwest. Portland Adventist appeals that judgment, assigning error to the trial court's denial of its motion for directed verdict.[1] We conclude that the trial court erred because the text of the policy covers Portland Adventist's loss, as a matter of law. Accordingly, we reverse and remand for entry of a judgment that declares the rights of the parties consistent with this opinion.

The following facts are undisputed. Portland Adventist is a self-insurer for purposes of the Workers' Compensation Law. *See* ORS 656.407 (qualifications for a self-insured employer). As required, Portland Adventist carries excess workers' compensation insurance. *See* ORS 656.430(8) (requiring self-insured employer to have appropriate excess insurance coverage). During 1992, Repwest was Portland Adventist's excess insurer for those purposes. Portland Adventist's 1992-1993 policy with Repwest provides that the policy

> "applies to loss sustained by the Insured because of liability imposed upon the Insured by * * * [t]he Workers' Compensation Act [of Oregon] * * * on account of Bodily

---

[1] Portland Adventist also raised assignments of error challenging the court's denial of its motion for summary judgment and exclusion of expert testimony at trial. Because we reverse the trial court's denial of Portland Adventist's motion for directed verdict, we do not address those assignments of error.

Injuries and Occupational Disease sustained by Employees employed by the Insured * * * as a result of occurrences taking place on or after the effective date and while this Policy is in force."

"Loss" is defined by the policy as "only such amounts as are actually paid by the Insured in payment of benefits under the applicable Workers' Compensation Act, * * * in settlement of claims for such benefits or damages, or satisfaction of awards or judgments for such benefits and damages[.]" "Occurrence," for purposes of bodily injury, is defined by the policy as "Accident." The policy provided Portland Adventist with $5 million in coverage for "Each Occurrence," with a $300,000 self-insured retention for "Each Occurrence." Portland Adventist was responsible for the amount of the retention and Repwest "agree[d] to indemnify the Insured against loss in excess of such retention."

In 1992, during the policy period, an employee of Portland Adventist suffered a workplace injury to his neck, back, and right arm. While that claim was ongoing, in 1993, also during the policy period, the employee suffered a workplace injury to his back. In 1995, Portland Adventist and the employee resolved those claims through a stipulation and order, signed by a Workers' Compensation Board (WCB) referee. Under the stipulation, all benefits for treatment and disability from the 1993 claim were subsumed into the 1992 claim, and the 1992 claim resulted in an award of permanent partial disability to the employee for the accepted conditions of cervical strain, mid-back strain, acute back strain/contusion, bilateral elbow contusion, right shoulder contusion, and right wrist contusion.

In 1998, the employee sought benefits for an aggravation of his 1992 back injuries, and, after Portland Adventist denied that claim, filed a new injury claim, which Portland Adventist also denied. In 2002, Portland Adventist resolved those claims with the employee through a stipulation and order, signed by a WCB administrative law judge (ALJ). Under that stipulation, Portland Adventist accepted the employee's aggravation claim, denied the new injury claim because the new incident was not the major contributing cause of the aggravation, expanded the 1992 claim acceptance to include "T5-6 and T6-7 disc protrusions with

resulting thoracic radiculopathy and implantation of programmable spinal infusion pump," and awarded additional permanent partial disability.

In 2006, the employee continued to have pain, and, after a workplace incident that increased his pain, he submitted a new injury claim. Portland Adventist denied that claim based on its position that the major contributing cause of the employee's condition was the 1992 injuries. In 2007, Portland Adventist and the employee resolved that claim through a stipulation and disputed claim settlement, approved by a WCB ALJ. Under that settlement, Portland Adventist and the employee agreed that they both had substantial evidence for their positions but agreed to process the employee's low-back condition under the 1992 claim. Portland Adventist then modified the 1992 acceptance to include a disabling L4-5 disc herniation.

In 2008, Portland Adventist provided Repwest with notice of the employee's claim, explaining that the claim had not yet reached the retention of $300,000, but that there was still exposure for future medical care. After Portland Adventist reported a substantial increase in medical costs for the employee, Repwest filed this declaratory judgment action, seeking a declaration that the policy excluded coverage for the employee's expanded 1992 claim.

The parties brought cross-motions for summary judgment. Both parties focused their arguments on the term "occurrence," which the policy defines as "accident." Repwest argued that each event that precipitated a new claim from the employee is a separate occurrence under the policy with a separate retention amount. Portland Adventist argued that the post-1992 claims and settlements represented aggravations of the employee's 1992 injury that were not separate occurrences under the policy and, to the extent that the policy is ambiguous, it must be interpreted in Portland Adventist's favor.

The trial court denied the cross-motions for summary judgment on that issue,[2] concluding that there was a

---

[2] Portland Adventist had also moved for summary judgment on the issue of "late notice" in Repwest's complaint, which the trial court granted. Repwest abandoned its cross-appeal of that determination.

disputed issue of fact. In the order, the trial court made the following conclusions:

"1. The Court finds that the policy term "Accident" is ambiguous and capable of more than one interpretation. Pursuant to *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 836 P2d 703 (1992), and other Oregon insurance policy interpretation case law, the Court analyzes whether the competing interpretations asserted by both parties are reasonable. The Court finds that both [Repwest]'s interpretation and [Portland Adventist]'s interpretation are reasonable in the context of the surrounding language and the policy as a whole. The Court construes the policy language against plaintiff Repwest.

"2. The Court finds that the policy may provide coverage for Portland Adventist's obligations to [the employee] under the Oregon's Workers' Compensation Act, even if there are accidents or incidents outside the policy period that contributed to those obligations.

"3. However, the Court finds, on the record before it, that there remains a triable issue of fact about whether the major contributing cause of Portland Adventist's obligations to [the employee] under the Workers Compensation Act resulted from the 1992 or 1993 claims."

The trial court held a jury trial on the identified disputed fact issue. Before the case was submitted to the jury, Portland Adventist moved for a directed verdict, arguing that, based on the policy coverage text, Portland Adventist's "loss" was covered as a matter of law, leaving no fact issue for the jury to decide. The trial court denied that motion.

The trial court submitted the following question to the jury: "Was the major contributing cause of Portland Adventist's obligations to [the employee] under the Workers' Compensation law his 1992 claim?" The jury answered, "no." The trial court then entered a declaratory judgment in Repwest's favor as follows:

"Plaintiff Repwest have judgment for declaratory relief that (1) Portland Adventist has not exhausted its $300,000 Retention under the Repwest policy; and (2) Portland

Adventist cannot, under the Repwest policy, aggregate its financial obligations for the underlying claim as a single claim of loss for purposes of exhausting the policy Retention."

Portland Adventist appeals from that judgment, raising three assignments of error. We address only Portland Adventist's second assignment of error, in which it challenges the trial court's denial of its directed verdict motion.

"A directed verdict is appropriate only if the moving party is entitled to judgment as a matter of law." *Yoshida's Inc. v. Dunn Carney Allen Higgins & Tongue,* 272 Or App 436, 443, 356 P3d 121 (2015), *rev den,* 358 Or 794 (2016). To address Portland Adventist's assignment of error, we must ascertain the meaning of the 1992-1993 policy, which presents a question of law. *Hoffman Construction Co.,* 313 Or at 469. Our primary task is to determine the intention of the parties "based on the terms and conditions of the insurance policy." *Id.* If the term in question is defined by the policy, we apply that definition. *Holloway v. Republic Indemnity Co. of America,* 341 Or 642, 650, 147 P3d 329 (2006). If the term is not defined, "we first consider whether the [term] in question has a plain meaning, *i.e.,* whether it is susceptible to only one plausible interpretation." *Id.* (internal quotation marks omitted). If so, we apply that meaning. *Id.* If the term has more than one plausible interpretation, then we examine the term "in light of 'the particular context in which that term is used in the policy and the broader context of the policy as a whole.'" *Id.* (quoting *Hoffman Construction Co.,* 313 Or at 470 (brackets omitted)). If an ambiguity persists, then we construe the policy against the insurer. *Hoffman Construction Co.,* 313 Or at 470-71.

As provided above, 285 Or App at 75-76, the 1992-1993 policy

"applies to loss sustained by the Insured because of liability imposed upon the Insured by * * * [t]he Workers' Compensation Act [of Oregon] * * * on account of Bodily Injuries and Occupational Disease sustained by Employees employed by the Insured * * * as a result of occurrences taking place on or after the effective date and while this Policy is in force."

"Loss" is defined in the policy as "only such amounts as are actually paid by the Insured in payment of benefits under the applicable Workers' Compensation Act, * * * in settlement of claims for such benefits or damages, or satisfaction of awards or judgments for such benefits and damages[.]"

Portland Adventist argues that, applying the policy's definition of "loss," the policy unambiguously covered Portland Adventist's settlements with the employee, which settled the employee's post-1992 claims as aggravations of his 1992 injuries. Portland Adventist then argues that that loss was imposed on it by the Workers' Compensation Law as a single occurrence and, therefore, was covered by the policy with a single retention. Portland Adventist also argues that, to the extent Repwest is complaining about the fairness or propriety of Portland Adventist's decisions to settle those claims in the manner that it did, Repwest can pursue those complaints only as a bad faith or fraud claim, which it did not bring.

Repwest, for its part, contends that there is nothing in the policy for us to interpret on appeal. Instead, Repwest asserts, without reference to the policy text or Oregon law, that it is not bound by Portland Adventist's claims decisions for purposes of determining policy coverage because Portland Adventist was motivated, against Repwest's interests, to improperly process the employee's claims as aggravations of the 1992 injuries. Repwest also argues that the evidence supported the jury's verdict in its favor.

To frame our analysis, we first set out what is not disputed on appeal. There is no dispute that Portland Adventist sustained "loss" in the form of actual payments to the employee as benefits under the Workers' Compensation Law "in settlement of claims for such benefits." It is also not disputed that that "loss" was sustained by Portland Adventist "because of liability imposed upon the Insured by * * * [t]he Workers' Compensation Act." Also, neither party on appeal seeks our review of the trial court's interpretation of the policy term "occurrence" (defined as "accident"). That interpretation was that "the policy may provide coverage for Portland Adventist's obligations to [the employee] under the Oregon's Workers' Compensation Act, even if there are

accidents or incidents outside the policy period that contributed to those obligations," if the major contributing cause of the obligation to the employee was the occurrence during the policy period. Finally, it is not disputed by Repwest that Portland Adventist did, in fact, process the employee's claims as aggravations of his 1992 injuries, such that all payments to the employee were attributed to the 1992 occurrence. *See* ORS 656.273(1) (an aggravation claim is for a "worsened condition[] resulting from the original injury").

What is disputed on appeal is whether, based on the text of the policy, the trial court was permitted to submit to the jury, as an issue of disputed fact, whether Portland Adventist should not have settled the employee's post-1992 claims as aggravations of his original 1992 injuries because other occurrences were, in fact, the major contributing cause of the employee's later injuries. Put another way, we are asked to resolve, under the policy, whether Repwest can contest Portland Adventist's claims processing decisions to settle the employee's claims as aggravations of the employee's 1992 injuries. As explained below, we conclude that the only plausible interpretation of the policy is that Repwest cannot do so.

The policy covers "loss"; it does not provide coverage for "occurrences." So, as a starting point, to resolve the coverage issue presented by the parties, we must remain focused on the term "loss." The policy definition of "loss" explicitly includes actual payments for benefits under the Workers' Compensation Law "in settlement of claims for such benefits." The settlements at issue here provide that the benefits Portland Adventist actually paid under the settlements, *i.e.*, the "loss," were on account of the employee's 1992 injuries because those 1992 injuries were agreed to be the major contributing cause of the employee's subsequent conditions. And, therefore, under the trial court's interpretation of "occurrence"—*i.e.*, an accident that is the major contributing cause of Portland Adventist's obligation to the employee—Portland Adventist sustained loss *only* as a result of the employee's 1992 accident because it is only on account of that accident that Portland Adventist made actual payments to the employee. Portland Adventist did not make any actual payments for a new injury caused by a

new occurrence and, thus, did not sustain a policy "loss" as a result of an "occurrence" other than the one precipitating the 1992 injuries.

Additionally, those settlements were approved by the WCB, making the payments a liability imposed by the Workers' Compensation Law on account of injuries to the employee sustained as a result of the 1992 occurrence, based on the trial court's interpretation of occurrence. *See Deaton v. Hunt-Elder*, 145 Or App 110, 116, 928 P2d 992 (1996) (under OAR 438-009-0005(4), a stipulated settlement agreement approved by an ALJ is a determination of the matters in the stipulation and, thus, "is the equivalent of an order the ALJ would have issued at the conclusion of the hearing and is a decision on the merits"). Thus, the loss at issue here—*i.e.*, the benefits Portland Adventist actually paid to the employee for his 1992 injuries—is covered by the plain text of the policy as a single occurrence with a single retention amount.

Repwest's arguments do not provide a plausible alternative interpretation of the policy text. Repwest argues that it should be able to crack open Portland Adventist's settlements with the employee and litigate whether Portland Adventist *should have* sustained the loss as a result of a different occurrence, instead of accepting the loss Portland Adventist *actually* sustained, which was a result of the 1992 occurrence. That argument ignores the policy definition of "loss," which covers benefits "actually paid"—not speculative payments that might have been paid if the matter had been handled differently—and which covers settlements—the purpose of which is to settle, with finality, disputed matters, such as whether the employee's subsequent conditions were aggravations of his 1992 injuries.

We agree with Portland Adventist that the concerns raised by Repwest—*viz.*, that an insured could improperly link new workers' compensation claims to an earlier claim to disadvantage the excess insurer—are concerns that exist apart from the policy text in this case and, thus, can be addressed only by way of a claim that is based on the insured's bad faith or fraud in processing the workers' compensation claims. Those concerns cannot alter the meaning

of "loss" as defined in the policy. Here, Repwest did not bring such a claim; it only requested a declaration of policy coverage based on the text of the policy. That claim we have resolved in Portland Adventist's favor.

Based on the foregoing, the trial court erred in denying Portland Adventist's motion for a directed verdict. Accordingly, we reverse and remand for the trial court to enter a declaratory judgment in Portland Adventist's favor with declarations consistent with this opinion.

Reversed and remanded.