SHORR, J.
*290 *821 This appeal arises from an action for defense costs and indemnity brought by Bighorn Logging Corporation (Bighorn) against Truck Insurance Exchange (Truck). Bighorn was the defendant in a timber trespass lawsuit filed by Paul Ater. In April 2012, Bighorn had approached Ater requesting a limited license to use up to three Douglas fir trees on Ater's property (the Ater property) as "tail hold trees" that would be used to secure "yarder lines" in connection with a logging operation on an adjacent property owned by Dr. Edney (the Edney property).[1] Bighorn explained to Ater that it would use only two or three trees and take specific precautions to ensure that there was no or minimal damage to Ater's trees. Under those proposed conditions, Ater granted Bighorn a limited license to use the indicated trees.
In his complaint, Ater alleged that, contrary to its representations, Bighorn failed to effectively employ methods designed to minimize damage to Ater's trees. Instead, Bighorn used a chainsaw to "girdle" the trees and create wedge-shaped cuts to keep the steel yarder lines in place. In total, Bighorn cut down or severely damaged 18 Douglas fir and alder trees as well as numerous shrubs and small trees on Ater's property. The Ater lawsuit went to trial, and Bighorn was found liable by a jury for "intentionally or recklessly" damaging Ater's trees.
Bighorn tendered defense of Ater's claim to Truck pursuant to a commercial general liability (CGL) insurance policy that Bighorn had purchased from Truck. Truck concluded that it was not obligated to defend or indemnify Bighorn because, in its view, Ater's complaint alleged conduct for which the policy did not provide coverage and, in the event that there was coverage, Bighorn's alleged conduct was subject to exclusions in the insurance policy.
After Truck refused to defend or indemnify Bighorn, Bighorn brought a breach of contract action against Truck. The trial court entered summary judgment for Bighorn and denied Truck's cross-motion for summary judgment. On *822 appeal, Truck assigns error to those rulings and reprises its arguments that it was not obligated under the insurance policy to defend Bighorn against Ater's timber trespass claim or to indemnify Bighorn against the liability that resulted from that claim. For the reasons explained below, we affirm.
I. BACKGROUND
Before discussing Truck's duty to defend and indemnify Bighorn in the Ater case, we turn to a more detailed explanation of the factual and procedural background leading to this appeal. The following material facts are undisputed.
A. Insurance Policy Provisions
The insurance policy that Truck sold to Bighorn provided that Truck would defend and indemnify Bighorn in certain lawsuits. Regarding those duties, the policy provided, in relevant part, that
"[Truck] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [Truck] will have the right and duty to defend the insured against any 'suit' seeking those damages."
The policy applies to "property damage" only if the damage was "caused by an 'occurrence' that takes place in the 'coverage territory' " and "during the 'policy period.' "
The policy contains several exclusions, three of which are relevant to this appeal. Exclusion 2(a) excludes coverage for property damage "expected or intended" by the insured. Exclusion 2(j)(5) excludes coverage for "property damage" to "that particular part of real property on which you *** are performing operations, if the 'property damage' arises out of those operations." Exclusion 2(j)(6) excludes coverage for "property damage" to "that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."
*291 The policy also defines several terms. The term "occurrence" as used to describe the kind of property damage covered by the policy means "an accident, including continuous or repeated exposure to substantially the same *823 general harmful conditions"; the policy does not further define the term "accident." "Property damage" means "physical injury to tangible property, including all resulting loss of use of that property." "Your work" as used in exclusion 2(j)(6) means "work or operations performed by [Bighorn]." The policy does not further define the term "operations" as used in exclusion 2(j)(5) and the definitional language in exclusion 2(j)(6) or what it means for property damage to be "expected or intended" as used in exclusion 2(a).
B. Ater's Complaint Against Bighorn
In 2013, Ater filed a timber trespass action against Bighorn. In the original complaint, Ater alleged that Bighorn had "willfully" and "intentionally" trespassed on Ater's property, resulting in timber damage. In the first amended complaint, Ater specifically alleged both "intentional" and "negligent" timber trespass, ORS 105.810 ; ORS 105.815. Ater relied on the same factual allegations to support both claims, namely, Ater alleged that Bighorn had exceeded the limited license granted by Ater when it used a chainsaw to cut and girdle numerous trees on Ater's property in lieu of using the promised methods designed to minimize tree damage. With respect to the intentional trespass claim, Ater alleged that Bighorn had "blatantly violated the limited license granted by plaintiff and willfully, intentionally and without plaintiff's consent trespassed on plaintiff's property." With respect to the negligent trespass claim, Ater alleged only that Bighorn had "negligently" damaged the trees.
Timber trespass includes cutting down, girdling, or otherwise injuring any "tree, timber, or shrub on the land of another person." ORS 105.810(1). Under ORS 105.815(1), "judgment shall be given for double damages" for timber trespass if, among other things, it "appears that the trespass was casual or involuntary." Proof of "casual or involuntary" trespass does not require a showing of negligence, as "that disjunctive statutory language encompasses non-negligent, non-volitional trespass." Wyatt v. Sweitz , 146 Or. App. 723, 728, 934 P.2d 544 (1997). By contrast, damages are trebled if the acts listed in ORS 105.810(1) were committed "willfully, intentionally and without plaintiff's consent."
*824 ORS 105.810(1). Under ORS 105.810(1), "upon plaintiff's proof of ownership of the premises and the commission by the defendant of any of the acts mentioned in this section[, including cutting down and girdling trees], it is prima facie evidence that the acts were committed by the defendant willfully, intentionally, and without plaintiff's consent." Put differently, a plaintiff need not prove that the defendant maliciously or purposely damaged the plaintiff's trees to prevail on an intentional timber trespass claim. Evidence that the plaintiff owns the premises and that the "defendants' conduct was such that they knew the tree would be injured as a result of their acts"-regardless of whether the defendant acted with "such a narrow focus"-is sufficient. Brown v. Johnston , 258 Or. 284, 289, 482 P.2d 712 (1971).
C. Bighorn Tenders Defense and Indemnity to Truck
After Ater served Bighorn with his complaint, Bighorn invoked Truck's duty to defend and indemnify Bighorn in the Ater case. Truck refused. It explained to Bighorn that, based on the allegations in Ater's complaint, the damage to Ater's property was the result of Bighorn's intentional conduct, not an "occurrence" (i.e. , an "accident") as required by the insurance policy to trigger Truck's duty to defend or indemnify. Truck also informed Bighorn that the underlying factual allegations-that Bighorn had used a chainsaw to cut and girdle Ater's trees rather than using methods designed to avoid damage to the trees as it promised to do to secure a limited license from Ater-fell within exclusion 2(a) for "expected or intended" property damage, exclusion 2(j)(5) for property damage to the "particular part" of the property on which Bighorn was performing "operations," and exclusion 2(j)(6) for property damage caused by Bighorn "incorrectly" performing its "work."
*292 D. Result of the Ater Case
Ater's case against Bighorn was tried to a jury. The jury returned a verdict for Ater with a number of special findings. The jury answered "No" to the question, "Were any of the trees on plaintiff's property harvested or damaged by defendant subject to the April 2012 License Agreement?" The jury answered "Yes" to the question, "Did [Bighorn]
*825 intentionally or recklessly girdle, injure or sever any trees on [Ater's] property without probable cause to believe that the trees were located on Dr. Edney's property?" Finally, the jury found that "[Ater's] damages resulting from [Bighorn's] intentional or reckless conduct" totaled $21,557.
After the jury returned its verdict, the trial court entered a general judgment and money award. The court adjudged that Ater "shall have judgment in his favor and against [Bighorn] on his intentional timber trespass [claim] under ORS 105.810 for $82,878.51, which is the jury's assessed damages of $21,557 plus prejudgment interest of $10,794.72 trebled to $97,055.16 less defendant's pretrial mitigation payment of $14,176.65."
E. Bighorn's Action Against Truck
Following the conclusion of the Ater case, Bighorn filed its own action against Truck. Bighorn asserted two claims for breach of contract: one for Truck's refusal to defend Bighorn and one for its failure to indemnify Bighorn for the liability imposed as a result of the Ater case. The parties filed cross-motions for summary judgment on both claims. Bighorn argued that Truck had a duty to defend and indemnify in the Ater case as a matter of law because Ater's complaint alleged, in part, that Bighorn had committed negligent timber trespass when it cut and girdled Ater's trees, and Bighorn was ultimately found liable for "reckless" trespass, which was within the insurance policy's scope of coverage. Truck responded that it was not obligated to defend or indemnify Bighorn because exclusions 2(j)(5) and 2(j)(6) unambiguously applied to the allegations in Ater's complaint. Truck also argued that it was not obligated to indemnify Bighorn because the trial court's judgment held Bighorn liable for "intentional" trespass, which necessarily meant either that Bighorn was responsible for property damage that fell outside the scope of the policy or that Bighorn was found liable for property damage that it "intended" to occur.
The trial court granted Bighorn's motion for summary judgment and denied Truck's cross-motion. The court acknowledged that "coverage does not exist for intentional *826 actions" but explained that an "intentional" act in the insurance context is one where "the action was intended and a purpose of damaging a person or property was also intended." Ater had alleged that Bighorn had intentionally or negligently cut and girdled Ater's trees but had not alleged that it had done so with the purpose of damaging or killing the trees. The court also determined that whether exclusions 2(j)(5) and 2(j)(6) applied to the allegations in Ater's complaint was ambiguous. Because ambiguities are construed against the insurer, the court concluded that Truck had not proved that those exclusions terminated its duty to defend Bighorn.
F. Truck Appeals
On appeal, Truck assigns error to the trial court's rulings on the cross-motions for summary judgment. Truck reiterates its argument that, as a matter of law, it was not obligated under the insurance policy to defend Bighorn against Ater's timber trespass claims or to indemnify Bighorn against the liability for damages that resulted from those claims. For summary judgment to be appropriate on the duty to defend or the duty to indemnify, there must be no genuine dispute of material fact and the moving party must be entitled to judgment as a matter of law. Ledford v. Gutoski , 319 Or. 397, 403, 877 P.2d 80 (1994).
II. ANALYSIS
Our resolution of this appeal turns on our interpretation of the insurance policy that Truck sold to Bighorn, which presents a question of law. Hunters Ridge Condo. Assn. v. Sherwood Crossing , 285 Or. App. 416, 422, 395 P.3d 892 (2017). Therefore, we first set *293 out the legal principles that govern the duty to defend and the duty to indemnify in the liability insurance context. We then turn to the specific issues presented on appeal.
A. Overview of Duty to Defend and Duty to Indemnify
Typically, when an insured purchases an insurance policy that protects against liability, the insurer assumes multiple duties to the insured. One duty commonly found in CGL policies is the duty to defend, which arises from an agreement that the insurer will defend the insured in *827 legal actions involving claims that could impose liability for conduct covered by the policy. FountainCourt Homeowners' v. FountainCourt Develop. , 360 Or. 341, 354, 380 P.3d 916 (2016). Another common duty is the duty to indemnify, which arises where the insurer agrees to repay the insured for any liability covered by the policy that is at or below the policy limit. Bresee Homes, Inc. v. Farmers Ins. Exchange , 353 Or. 112, 126, 293 P.3d 1036 (2012).
The duty to defend and the duty to indemnify are independent of one another and must be analyzed separately. Id . at 114, 293 P.3d 1036. There may be circumstances where one duty exists but the other does not. ZRZ Realty v. Beneficial Fire and Casualty Ins. , 349 Or. 117, 150, 241 P.3d 710 (2010). Accordingly, we describe the circumstances that give rise to each duty below.
1. Duty to defend
An insurer's duty to defend an insured is determined by comparing the "four corners" of the complaint to the "four corners" of the insurance policy. West Hills Development Co. v. Chartis Claims , 360 Or. 650, 652-53, 385 P.3d 1053 (2016). Under that so-called four- or eight-corners rule, one compares the allegations in the complaint to the terms of the insurance policy to determine whether the insurer must defend the alleged conduct of the insured. If the allegations in the complaint assert a claim covered by the policy-even if it does so alongside claims that are not covered or does so ambiguously-the insurer has a duty to defend. Id. at 653, 385 P.3d 1053 ; see also Bresee Homes, Inc. , 353 Or. at 117, 293 P.3d 1036 ("The inclusion in the complaint of other allegations describing claims that fall outside the policy's coverage is immaterial. Any ambiguity concerning potential coverage is resolved in favor of the insured." (Citation omitted.)). Put differently, "the insurer has a duty to defend if the complaint provides any basis for which the insurer provides coverage," i.e. , if the facts in the complaint "may reasonably be interpreted to include conduct within the coverage of [the insurance] policy." Ledford , 319 Or. at 400, 877 P.2d 80 (emphasis in original). The insured bears the initial burden of proving that the allegations in the complaint assert a claim covered by the policy. FountainCourt Homeowners , 360 Or. at 360, 380 P.3d 916.
*828 The allegations in the complaint may fail to describe a claim covered by the insurance policy either because the allegations do not involve insured conduct or because one or more coverage exclusions in the policy absolve the insurer of its duty to defend. If the insured proves that the allegations in the complaint trigger the insurer's duty to defend, the insurer may still avoid liability by meeting its burden to show that one or more exclusions in the insurance policy absolve it of that duty. Id .
2. Duty to indemnify
An insurer's duty to indemnify is determined by whether the insured is found to be liable for harm or injury that is covered by the insurance policy. Ledford , 319 Or. at 405, 877 P.2d 80. Unlike the duty to defend, which is triggered based entirely on a comparison of the allegations in the complaint with the terms of the insurance policy, the duty to indemnify is triggered when the findings made by the trier of fact as to what actually occurred fall within the scope of coverage and are not subject to any exclusion in the policy.
As with the duty to defend, the insured bears the burden of proving that the insurer has a duty to indemnify. FountainCourt Homeowners , 360 Or. at 360, 380 P.3d 916. The insurer bears the burden to show that one or more exclusions apply to all or *294 some of the judgment against the insured. Id .
B. Truck's Duty to Defend
Truck argues on appeal that it was not obligated to defend Bighorn in the Ater case because exclusions 2(j)(5) and 2(j)(6) in the insurance policy apply to the allegations raised in Ater's complaint. To resolve whether the trial court erred when it granted summary judgment to Bighorn on that issue, we must decide whether those exclusions apply.
Whether an exclusion in an insurance policy relieves an insurer of its duty to defend the insured will depend on the meaning of the exclusion and whether, properly construed, it encompasses all of the allegations made in the complaint that would otherwise give rise to that duty. We interpret the terms of the policy from the perspective of an "ordinary purchaser of insurance."
*829 Hunters RidgeCondo. Assn. , 285 Or. App. at 422, 395 P.3d 892 (citing Congdon v. Berg , 256 Or. App. 73, 87, 299 P.3d 588 (2013) ). When a particular word or phrase is not defined in an insurance policy, we first ask whether the word or phrase has a plain meaning-i.e. , whether it is susceptible to only one plausible interpretation. Id. (citing Holloway v. Republic Indemnity Co. of America , 341 Or. 642, 650, 147 P.3d 329 (2006) ). An interpretation is plausible if it is "sensible and reasonable" under the circumstances. Laird v. Allstate Ins. Co. , 232 Or. App. 162, 171, 221 P.3d 780 (2009). If there is more than one plausible interpretation, we examine the word or phrase in the context in which it is used in the policy and the broader context of the policy as a whole. Hunters Ridge Condo. Assn. , 285 Or. App. at 422-23, 395 P.3d 892. If the ambiguity persists at that point-that is, if two or more plausible interpretations remain-any reasonable doubt as to the meaning of the word or phrase will be resolved in favor of the insured and against the insurer. Id. at 423, 395 P.3d 892.
Ater's complaint includes allegations that Bighorn committed either intentional or negligent timber trespass when it used a chainsaw to cut and girdle trees on Ater's property. Ater alleged that, whether intentional or negligent, Bighorn's actions exceeded the scope of the limited license that Ater had granted to Bighorn to use a finite number of trees as tail holds to facilitate Bighorn's logging operations on the adjacent Edney property and to do so in a manner that would minimize harm to the trees.
The parties do not dispute that Bighorn's primary operation was the logging project on the Edney property adjacent to the Ater property. But Bighorn and Truck disagree on whether exclusion 2(j)(5) or 2(j)(6) applies to the ancillary work done on Ater's property, including work that went beyond the scope of the limited license granted by Ater that resulted in damage to Ater's trees. Truck argues that both exclusions unambiguously encompass and thereby exclude work performed by the insured on a third party's property, such as Ater's, that is tangential to the primary project covered by the policy. Bighorn responds that both exclusions must be construed narrowly and apply only to exclude coverage for property damage resulting from the work that Bighorn specifically was under contract to *830 perform in the areas that Bighorn specifically was under contract to be-namely, its logging operations on the Edney property but not its ancillary work on Ater's property, and certainly not work that it was not licensed to perform on that property.
We first consider the plain meaning of both exclusions and conclude that each is susceptible to multiple, plausible interpretations, including the interpretations advanced by both parties at summary judgment and on appeal. As recited above, exclusion 2(j)(5) applies to exclude coverage for property damage to "[t]hat particular part of real property on which you *** are performing operations, if the property damage arises out of those operations." The terms "particular part of real property" and "operations" are not defined in the policy.
Read together, the "particular part" of the property where the insured is performing its "operations" could plausibly refer to any piece of property where the insured is performing any work at all related to the contracted *295 project (i.e. , the Edney logging operation in this case) whether authorized or not. Under that broad reading, exclusion 2(j)(5) would apply to Bighorn's work on the Ater property because that work was related to Bighorn's primary operations on the Edney property. But the "particular part" of property where Bighorn is performing "operations" is also susceptible to a narrower reading and could refer only to the specific parts of the property where the insured is under contract to work and the specific project that the insured is under contract to perform on that property. Under that reading, exclusion 2(j)(5) would not apply to Bighorn's work on Ater's property; Bighorn was under contract to perform logging operations on a particular portion of the Edney property and was only incidentally working on the Ater property.[2] Cf. Thommes v. Milwaukee Insurance Co. , 641 N.W.2d 877, 883-84 (Minn. 2002) (concluding that an insurance policy with the same exclusion 2(j)(5) was ambiguous with respect to its applicability to damage to the property of third parties); *831 Pekin Ins. Co. v. Miller , 367 Ill. App. 3d 263, 270, 305 Ill.Dec. 101, 854 N.E.2d 693 (2006) (same).[3]
Even if we assume that exclusion 2(j)(5) unambiguously extends to those specific, licensed activities on a third-party's property that are connected to the insured's contracted work, Ater alleged that Bighorn had damaged his trees when it exceeded the scope of its limited license to use his property. It is ambiguous whether exclusion 2(j)(5) applies under those circumstances because, as described, it is at least plausible that the terms "operations" and "particular part of real property" encompass only those activities that Bighorn was permitted to undertake within the scope of a contract or license and only on the parts of the property where Bighorn was authorized to carry out that work.
Exclusion 2(j)(6) is similarly susceptible to multiple meanings. That exclusion applies to exclude coverage for "property damage" to "that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Under the policy, "your work" means "work or operations" performed by Bighorn. Neither "work" nor "operations" are further defined by the policy. Indeed, nowhere does the policy indicate whether "your work" is confined to the work Bighorn was specifically under contract to perform or authorized to perform under a limited license from a third party. Thus, the exclusion is ambiguous for the same reason that exclusion 2(j)(5) is ambiguous; it is unclear whether the terms "work" or "operations" refer only to the insured's primary, contracted operation on the "particular part" of the property *832 under contract or also encompasses derivative or ancillary activities on an adjacent third-party's property, including activities beyond the scope of any limited license that the insured might have to work on that property.
Having concluded that exclusions 2(j)(5) and 2(j)(6) are subject to more than one plausible interpretation and apply to the allegations in the Ater complaint, we must determine whether Bighorn's construction remains plausible when examined in context. See Holloway , 341 Or. at 650, 147 P.3d 329. Neither the immediate context in which the exclusions appear nor the broader context of the policy as a whole point to a single plausible *296 understanding of either exception with respect to their applicability to the allegations in Ater's complaint. See Hunters Ridge Condo. Assn. , 285 Or. App. at 427, 395 P.3d 892 (explaining that we examine a disputed exclusion in its immediate context and the broader context of the policy as a whole). The immediate context is not illuminating because the policy leaves several key terms undefined. The policy also contains numerous other exclusions but none that more specifically describes the scope of the policy in a way that clarifies the scope of the exclusions at issue here.
As to the broader context, nowhere does the policy expressly or impliedly address whether any exclusions are intended to include or exclude property damage resulting from ancillary work performed by the insured on the property of third parties. The policy also does not provide any relevant statements of purpose or other evidence of the parties' intent when they agreed to the exclusions. See id. at 422, 395 P.3d 892 (explaining that the goal in construing an insurance policy is to "ascertain the intention of the parties" (citing Dewsnup v. Farmers Ins. Co. , 349 Or. 33, 39-40, 239 P.3d 493 (2010) ) ).
In sum, both Bighorn and Truck offered plausible interpretations of the language of exclusions 2(j)(5) and 2(j)(6) to the trial court at summary judgment. Because ambiguities concerning potential insurance coverage are resolved in favor of the insured, Bresee Homes, Inc. , 353 Or. at 117, 293 P.3d 1036, the trial court did not err when it granted Bighorn's motion for summary judgment on Truck's duty to defend and denied Truck's cross-motion on the same issue.
*833 C. Truck's Duty to Indemnify
As described, an insurer's duty to indemnify is determined by whether the insured is found to be liable for damages that are covered by the insurance policy. Ledford , 319 Or. at 405, 877 P.2d 80. To resolve whether the trial court erred when it granted summary judgment to Bighorn on that issue, we must decide whether Bighorn was found liable for conduct that was within the scope of coverage identified by the CGL policy as a matter of law and that that conduct was not subject to the exclusions that Truck invoked at summary judgment.
1. Trigger of coverage and the exclusion for "intended" injury
Truck's argument that it owed no duty to indemnify Bighorn is twofold: First, Bighorn could never prove under the circumstances that Truck's obligation to indemnify was triggered because, Truck contends, the trial court's judgment in the Ater case held Bighorn liable for "intentional timber trespass under ORS 105.810," while the insurance policy only covers property damage that results from an "occurrence," i.e. , an "accident"; and, second, that same judgment triggered policy exclusion 2(a), which applies when the insured is found liable for property damage that it "intended" to occur.
"Accident" is not defined in the policy. We have explained that "accident" in the insurance context usually means actions that are "unforeseen, unexpected, unintended, or the like," or, put another way, the question is "whether the insured specifically intended to cause the injury that gives rise to coverage." Minnis v. Oregon Mutual Ins. Co. , 162 Or. App. 198, 210, 986 P.2d 77 (1999), rev'd in part on other grounds , 334 Or. 191, 48 P.3d 137 (2002) ; see also Allstate Ins. Co. v. Stone , 319 Or. 275, 278-79, 876 P.2d 313 (1994) (rejecting the objective "natural and ordinary consequences" approach and explaining that "the exclusion from coverage for intentional acts [in the insurance context] depends on the subjective intent of the insured").
Here, the jury's verdict and the ultimate trial court judgment in the Ater case are not in complete agreement. The jury made the factual finding that Bighorn "intentionally *834 or recklessly" injured trees that were not "subject" to the limited license agreement and that Bighorn did so "without probable cause to believe that the trees were located on [the Edney] property." The Ater court entered a judgment holding Bighorn liable only for "intentional timber trespass under ORS 105.810." Unlike the verdict, the judgment makes no reference to recklessness. Truck argued to the trial court at summary judgment that the Ater court's description of Bighorn's trespass as "intentional" overrides *297 the jury's finding that Bighorn may have acted "recklessly" and indisputably demonstrates that Bighorn was found liable for nonaccidental property damage.
Even if we were to accept for the purpose of this appeal Truck's argument that the Ater court's judgment-to the exclusion of the jury's verdict-is the ultimate statement of Bighorn's liability, it does not follow that the trial court erred in granting Bighorn's motion for summary judgment and denying Truck's cross-motion.[4] Neither the jury nor the court in the Ater case found that Bighorn subjectively intended to damage Ater's trees. Instead, both found, at most, that Bighorn had committed intentional timber trespass. As explained, intentional timber trespass, ORS 105.810, may be proved without evidence that the defendant acted with the purpose of damaging the plaintiff's property. Brown , 258 Or. at 289, 482 P.2d 712. Thus, a plaintiff like Ater may prevail on an intentional timber trespass claim without ever asserting-much less presenting any evidence-that the defendant acted with the purpose of causing the alleged damage.
To reiterate, "injuries resulting from intentional acts are excluded from insurance coverage when the insured intended to cause the particular injury or harm, as opposed to merely intending the act." Ledford , 319 Or. at 401, 877 P.2d 80. That Bighorn was found liable for intentional timber trespass establishes, pursuant to ORS 105.810, only that Bighorn intended to cut and girdle Ater's trees when it did not have permission to do so under its limited license. That did not, *835 as Truck contends, "preclude" Truck's duty to indemnify under the policy, because it did not establish as a matter of law that Bighorn acted with the purpose of damaging Ater's property. See FountainCourt Homeowners , 360 Or. at 358, 380 P.3d 916 ("[W]hat the insured had become obligated to pay as damages and whether the insurer ultimately was liable under its policy presented questions of law for the court.").
For similar reasons, the trial court did not err when it concluded that Truck had failed to prove that exclusion 2(a) for "expected or intended" injury applied. The Supreme Court has explained that "the exclusion from coverage for intentional acts [in the insurance context] depends on the subjective intent of the insured." Allstate Ins. Co. , 319 Or. at 279, 876 P.2d 313. In other words, "the acts must have been committed for the purpose of inflicting the injury and harm before *** a policy provision excluding intentional harm [attaches]." Id . at 278, 876 P.2d 313. A court should infer a subjective intent to cause harm as a matter of law only when that is the "only reasonable inference that may be drawn from the insured's conduct." Id . at 279, 876 P.2d 313. As described, intentional timber trespass under ORS 105.810 has no such intent requirement and allows for liability even where the defendant did not act with the purpose of damaging the plaintiff's property.
Here, the jury found Bighorn liable for "intentionally or recklessly" trespassing on Ater's property by exceeding the scope of its limited license and cutting and girdling trees in a way that damaged or killed several of them. Truck's only evidence that Bighorn "intended" for that property damage to occur is the reference to "intentional timber trespass" in the Ater judgment. Truck did not present evidence at summary judgment that Bighorn was held liable based on a finding that it acted for the purpose of damaging Ater's trees. The trial court did not err in granting summary judgment because, contrary to Truck's arguments, Bighorn's liability to Ater for intentional trespass did not establish that Bighorn acted with the purpose of damaging Ater's trees.
2. Exclusions 2(j)(5) and 2(j)(6)
Truck's final argument with respect to its duty to indemnify is that exclusions 2(j)(5) and 2(j)(6) apply in this *836 case because, again, the Ater court's judgment held Bighorn liable for "intentional timber trespass." As discussed, both exclusions are ambiguous as to whether they apply when the insured is *298 alleged to have exceeded the scope of a limited license and damaged the property of a third party in the course of performing work tangentially related to its contracted operations on different property. The fact that Bighorn ultimately was found liable for such damage does not clarify that ambiguity. The trial court did not err when it determined that Truck had failed to carry its burden of proving that those exclusions apply with respect to its duty to indemnify Bighorn.
The trial court did not err when it granted Bighorn's motion for summary judgment on Truck's duty to defend and indemnify Bighorn in the Ater case and denied Truck's cross-motion on the same issues.
Affirmed.

Dr. Edney is referred to throughout the record simply as "Dr. Edney."

Truck does not argue that Bighorn's work on the Ater property was somehow essential to the success of the Edney logging operation or otherwise integral to the Edney operation.

We have previously looked to foreign jurisdictions when construing other commonly used insurance policy exclusions. See, e.g. , Epps v. Farmers Ins. Exchange , 295 Or. App. 385, 392-93, 434 P.3d 496 (2018) (relying, in part, on "numerous cases" from other states' courts as persuasive authority to ascertain the meaning and purpose of a particular liability insurance provision); Hunters Ridge Condo. Assn. , 285 Or. App. at 426, 395 P.3d 892 (finding that a policy exclusion was ambiguous in part because the plaintiff's construction of the exclusion was supported by New York case law); Fred Shearer & Sons Inc. v. Gemini Ins. Co. , 237 Or. App. 468, 481-82, 240 P.3d 67 (2010), rev. den. , 349 Or. 602, 249 P.3d 123 (2011) (relying on cases from other jurisdictions to support conclusion that policy exclusion was ambiguous). While not essential to our conclusion that exclusions 2(j)(5) and 2(j)(6) are ambiguous, the fact that other courts have not come to a consensus on the applicability of those exclusions in similar cases buttresses our own conclusion regarding that ambiguity.

We note that, in FountainCourt Homeowners , the Oregon Supreme Court stated that indemnity is determined "by reference to (a) the contract and (b) the judgment and record in the underlying proceeding." 360 Or. at 358, 380 P.3d 916 (emphasis added).